UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK ZAVISLAK,<br><br>    Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>    Defendant. | Case No.  5:21-cv-01811-EJD<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION, MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND MOTION TO STAY DISCOVERY**<br><br>Re: Dkt. Nos. 18, 19, 31 |

Plaintiff Mark Zavislak filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendant Netflix, Inc. ("Netflix") asserting claims seeking the following: (1) monetary damages under 29 U.S.C. § 1132(a)(1)(A) and (c)(1)(B) for failure to supply information requested pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4); (2) an injunction under 29 U.S.C. § 1132(a)(3) requiring Netflix's production of documents pursuant to § 1024(b)(4); and (3) an injunction requiring Netflix to maintain its benefit plan according to a written instrument pursuant to 29 U.S.C. § 1102(a)(1).  Am. Compl., Dkt. No. 16.  Zavislak now moves for a preliminary injunction requiring Netflix to prove "copies of any contract governing the administration of benefits under [Netflix's benefits plan]."  Mot. for Prelim. Inj. ("PI Mot."), Dkt. No. 18.  Netflix moves to dismiss the complaint, or in the alternative, for summary judgment.  Def. Netflix's Mot. to Dismiss, or in the Alt., Mot. for Summ. J. ("MTD/MSJ"), Dkt. No. 19.  Netflix further moves to stay discovery pending the Court's ruling on the motion to dismiss/motion for summary judgment.  Dkt. No. 31.

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.

1

1 　　　　The Court heard oral argument on the parties' motions on July 22, 2021. Dkt. No. 43.
2 Having considered the parties' moving papers and arguments made at the hearing, the Court
3 DENIES Zavislak's motion for a preliminary injunction, DENIES Netflix's motion to
4 dismiss/motion for summary judgment, and DENIES Netflix's motion to stay discovery.

## I. BACKGROUND

　　　　Netflix is a Delaware corporation with its principal place of business in Los Gatos, California. Am. Compl. ¶ 2. Netflix maintains the self-funded Netflix, Inc. Health and Welfare Benefits Plan ("the Plan") for the benefit of its employees. *Id.* ¶ 3. Zavislak is a beneficiary of the Plan through his spouse, who is a Netflix employee. *Id.* ¶ 1; *see also* Decl. of Diane Armanino in Supp. of Netflix's Mot. to Dismiss, or in the Alt. for Summ. J. ("Armanino MSJ Decl."), Dkt. No. 19-1, ¶ 8.

　　　　On January 6, 2021, Netflix received a letter from Zavislak dated January 1, 2021, postmarked January 4, 2021, and addressed to "Netflix, Inc." at Netflix's corporate headquarters. Am. Compl. ¶¶ 7-9; Armanino MSJ Decl., Ex. H, Dkt. No. 19-9, at 3. Among other things, Zavislak's letter requested, for each calendar year 2021 benefit plan that he was a beneficiary of, "documents governing the operation of the respective plan (e.g., formal plan document, trust agreement, insurance contract, contract of coverage, third party administration agreement, and in general, any document that the claim administrator or named fiduciary refers to when making benefit determinations under the respective plan)." Am. Compl. ¶ 9, Armanino MSJ Decl, Ex. H at 3. At the time, Netflix's Los Gatos office was open on a limited basis due to the COVID-19 pandemic and an order from the County of Santa Clara requiring businesses to maximize the number of personnel working remotely and encouraging citizens to stay at home as much as possible. Armanino MSJ Decl., Ex. N, Dkt. No. 20-4 at 4, 5, 6. Netflix instructed employees that could work from home to do so. *Id.* ¶ 6.

　　　　When Zavislak did not receive a response to his initial letter, he sent a second letter to Netflix's registered agent for service of process. Am. Compl. ¶ 10; Armanino MSJ Decl., Ex. H at

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.
2

1–2. In this letter, Zavislak stated for the first time that his request was made pursuant to 29 U.S.C. § 1024(b)(4), and he reminded Netflix that the penalty for failing to comply with his request within 30 days was $110 per day. Armanino MSJ Decl., Ex. H at 1. Netflix's in-house counsel contacted Zavislak and, after confirming his status as a Plan beneficiary, informed him that although Netflix's 2021 documents were not yet available, Netflix would provide what information it had at the time. *Id.* ¶ 9, Ex. J at 4. On February 24, 2021, Netflix provided Zavislak the following documents:

- Netflix Inc. Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description, effective January 1, 2020 ("the 2020 Wrap Plan Document")
- 2020 Collective Health Netflix HSA Summary Plan Description
- 2020 Delta Dental Summary Plan Description
- 2020 VSP Vision Evidence of Coverage
- 2021 Netflix Collective Health + Anthem HSA Plan Summary of Benefits and Coverage
- 2021 Netflix Delta Dental Plan Summary
- 2021 Netflix VSP Plan Summary

*Id.* ¶¶ 9-10, Exs. A-G, J; Am. Compl. ¶ 11.

Appendix 5 of the Netflix 2020 Wrap Plan Document references three insurance policies: Collective Health + Anthem STRM: 3328649, Delta Dental STRM: 3328649, and VSP 12130543. Am. Compl. ¶¶ 16-17; Armanino MSJ Decl., Ex. A at 48–49. Some of the other documents provided reference a "contract." For example, the 2021 Netflix VSP Plan Summary states, "In the event of a conflict between this information and your organization's contract with VSP, the terms of the contract will prevail." Am. Compl. ¶¶ 15(c), 29; Armanino MSJ Decl., Ex. G., at 2. The 2020 Delta Dental Summary Plan Description states: "This Employee Benefit Booklet is a summary of your group dental program. Please read it carefully. It only summarizes the detailed provisions of the group dental contract issued by Delta Dental of California ('Delta Dental') and

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.
3

cannot modify the Contract in any way. . . . The benefit explanations containing in this booklet are subject to all provisions of the Contract on file with your employer . . . and do not modify the terms and conditions of the Contract in any way, nor shall you accrue any rights because of any statement in or omission from this booklet." Am. Compl. ¶ 25; Armanino MSJ Decl., Ex. C at 2. The 2020 VSP Vision Evidence of Coverage document states: "THIS EVIDENCE OF COVERAGE AND DISCLOSURE FORM CONSTITUTES ONLY A SUMMARY OF THE TERMS AND CONDITIONS OF COVERAGE. THE PLAN CONTRACT ITSELF SHOULD BE CONSULTED TO DETERMINE GOVERNING TERMS AND CONDITIONS OF COVERAGE." Am. Compl. ¶ 28; Armanino MSJ Decl., Ex. D at 1.

Noting the above language and references, Zavislak requested copies of the policy documents for the insurance policies referenced in the Netflix 2020 Wrap Plan Document. Am. Compl. ¶ 18; Armanino MSJ Decl. ¶ 11, Ex. J at 3. Netflix responded that those references were erroneously included in the document, that the policies in question were "no longer available and not in use," and that "[t]hose policies no longer exist." Am. Compl. ¶¶ 19-20; Armanino MSJ Decl. ¶ 12, Ex. J at 2. Zavislak then requested "contracts with claims administrators such as Anthem providing operating instructions as to the administration of benefit claims." Am. Compl. ¶ 22; Armanino MSJ Decl. ¶ 13, Ex. J at 1. Netflix responded that it had provided all documents required by law and that "[t]here are no additional documents for disclosure." Am. Compl. ¶ 23; Armanino MSJ Decl. ¶ 13, Ex. J at 1.

On March 15, 2021—eleven days after Netflix's assertion that it had provided everything legally required—Zavislak filed this action. Dkt. No. 1. He filed the operative amended complaint on April 6, 2021. Dkt. No. 16. The motions now before the Court followed.

## II.   PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Zavislak seeks an injunction prohibiting Netflix from withholding copies of the third-party claims administration agreements between Netflix and Delta Dental, VSP, Collective Health, and Anthem. PI Mot. at 2. The Court finds this motion troubling as it essentially seeks to obtain the

relief sought in Zavislak's second claim without engaging in any discovery or dispositive motion practice.

### A. Legal Standard

The Supreme Court has emphasized that preliminary injunctions are an "extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To secure a preliminary injunction, a movant must make a clear showing that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20–22. To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### B. Discussion

The Court begins by examining Zavislak's likelihood of success on the merits. Zavislak contends that he is likely to succeed on merits for three reasons: (1) he is entitled to the claims administration agreements as a matter of law; (2) Netflix may not withhold any documents incorporated by reference into the Plan; and (3) Netflix must provide that "contracts" referenced in the benefit summary documents provided. Plf.'s Not. of Mot. and Mot. for Prelim. Inj. ("PI Mot."), Dkt. No. 18, at 5–9.

Zavislak's motion hinges on whether Netflix is required by law to provide its third-party claims administration agreements. Under 29 U.S.C. § 1024(b)(4), plan administrators are required, upon the request of a participant or beneficiary, to provide the requesting party with a

copy of various plan documents, including summary plan descriptions, annual reports, terminal reports, bargaining agreements, trust agreements, contracts, and other instruments under which the plan is established or operated. *Becker v. Williams*, 777 F.3d 1035, 1039 (9th Cir. 2015). Zavislak asserts that the Netflix claims administration agreements are "contracts" to which he is entitled, relying principally on *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009). PI Mot. at 5–7.

      Zavislak's reliance on *Mondry* is misplaced. His assertion that the Ninth Circuit in *Becker* adopted the Seventh Circuit's view in *Mondry* that claims administration agreements fall within § 1024(b)(4)'s ambit as a general matter is not an accurate characterization. In *Becker*, the Ninth Circuit described its narrow interpretation of what § 1024(b)(4) requires: only documents that inform a plan participant "exactly where [the participant] stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits . . . ." 777 F.3d at 1039 (quoting *Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc)) (internal quotation marks omitted). The *Becker* court expressly noted the Ninth Circuit's previous rejection of an interpretation of § 1024(b)(4) that includes "all documents that are critical to the operation of the plan." *Id.* Finally, the *Becker* court observed in a footnote that "[o]ther circuits have similarly construed § 1024(b)(4) as encompassing only formal documents that govern the operation of the plan," citing *Mondry* for its collection of cases concerning the interpretation of "instruments" in § 1024(b)(4). *Id.* at n.2. This footnote cannot be fairly read as endorsing, adopting, or even addressing *Mondry*'s holding that the claims administration agreement at issue in that case must be produced under § 1024(b)(4). Indeed, the portion of the *Mondry* opinion to which *Becker* cites is not the portion of *Mondry* that concerns the claims administration agreement. *Compare Becker*, 777 F.3d at 1039 n.2 (citing *Mondry*, 557 F.3d at 797–98) *with Mondry*, 557 F.3d at 797–98 (discussing production of documents that were not a claims administration agreement) *and Mondry*, 557 F.3d at 796 (discussing production of

1    claims administration agreement).

2    While the Ninth Circuit has not ruled decisively on the question, the Court notes that it has

3    affirmed a district court's conclusion that an administrative services agreement was not subject to

4    disclosure under § 1024(b)(4) where the agreement governed only the relationship between the

5    plan provider and claims administrator, and not the relationship between the plan participants and

6    the provider. *Hively v. BBA Aviation Benefit Plan*, 33 F. App'x 510, 511 (9th Cir. 2009).

7    Moreover, another court in this District has rejected a plan participant's request under §

8    1024(b)(4) for "any and all contracts or other documents under which [the plaintiff's] Long Term

9    Disability Plan has been established, operated, or administered" and "any and all documents

10   setting forth all financial arrangement between the Plan and/or Wink Communications, Inc. and/or

11   UNUM, (i.e., documents relating to payment of premiums, processing and/or monitoring of Plan

12   claims, etc.).") *Corby v. Unum Life Ins. Co. of Am.*, No. C 09-5890 WHA, 2010 WL 3768040, at

13   *8–9 (N.D. Cal. Sept. 21, 2010). The case law therefore does not appear to favor Zavislak's

14   position that he is legally entitled to the claims administration agreements, regardless of their

15   content[1], and he therefore appears unlikely to succeed on that aspect of his claims.

16   As to Zavislak's argument that he is entitled to the claims administration agreements

17   because they are incorporated by reference into the Wrap Plan, that argument appears to conflate

18   those agreements with the insurance policies listed in Appendix 5 of the Netflix 2020 Wrap Plan

19   Document. Mot. at 7–8 (citing Appendix 5 and emails discussing the insurance policies listed in

20   Appendix 5). Netflix has submitted declarations from its benefits manager attesting that "[t]here

---

[1] Zavislak objects to certain paragraphs of the declarations of Dana Armanino, Dan Morgan, Sharen Stanek-Lowe, Greg Gaunt, and Sarah Fitzmaurice submitted in support of Netflix's opposition to Zavislak's motion for a preliminary injunction under Federal Rule of Evidence 1002. Reply to Def.'s Opp'n to PI Mot., Dkt. No. 24, at 15. The Court sustains the objection as to paragraph 11 of the Armanino declaration (Dkt. No. 22-1), paragraphs 4 and 5 of the Morgan declaration (Dkt. No. 22-3), paragraphs 3-5 of the Stanek-Lowe declaration (Dkt. No. 22-5), paragraph 3 of the Gaunt declaration (Dkt. No. 22-6), and paragraphs 3-5 of the Fitzmaurice declaration (Dkt. No. 22-7). Netflix's evidentiary objections to paragraphs 8 and 11 of Zavislak's declaration in support of his motion for preliminary injunction are overruled. Netflix's Opp'n to PI Mot. ("PI Opp'n"), Dkt. No. 22, at 19–20.

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.

7

are no insurance policies that fund benefits or provide or define coverage or participant responsibilities," that the policies in Appendix 5 are outdated and the corresponding documents no longer exist, and that in the event Netflix needed to interpret its benefits plan or answer a participant's inquiry about benefits, it would consult only the documents it provided to Zavislak. Decl. of Diane Armanino in Supp. of Netflix's Opp'n to PI Mot. ("Armanino PI Decl."), Dkt. No. 19-1, ¶¶ 3, 12; *see also* Armanino MSJ Decl. ¶¶ 11-12.  There is no evidence before the Court to the contrary.

Finally, Zavislak argues that the summary documents he received are not, in fact, governing documents at all, and that only the contracts referenced in the summary documents are the governing documents to which he is entitled. Mot. at 8–9. Section 1024(b)(4) requires the provision of documents "under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Netflix has provided sworn statements from its benefits manager that the documents provided to Zavislak are the only documents that it maintains which provide benefits to the plan to which Zavislak is a beneficiary, and that in the event Netflix needed to interpret its benefits plan or answer a participant's inquiry about benefits, it would consult only those documents. Armanino PI Decl. ¶¶ 2, 12. This testimony indicates that the documents Netflix provided are documents "under which the plan is established or operated."

Zavislak further contends that the summary documents cannot themselves constitute the terms of the plan, relying on *Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011) for the proposition that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan." Mot. at 8 (internal quotation marks omitted, emphases original).  This position is contrary to Ninth Circuit law. "*Amara* addressed only the circumstance where both a governing plan document and [a summary plan description ('SPD')] existed, and the plan administrator sought to enforce the SPD's terms over those of the plan document. It did not address the situation . . . that a plan administrator seeks to enforce the SPD as the one and only formal plan document." *Prichard v.*

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.

8

*Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015). Accordingly, "an SPD may constitute a formal plan document, consistent with *Amara*, so long as the SPD neither adds to nor contradicts the terms of existing Plan documents." *Id.*; *see also Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We interpret *Amara* as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents."). *Amara* does not prohibit an arrangement where a summary plan description is part of the plan itself and does not conflict with the trust agreement establishing the benefits plan. *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017) (finding district court erred in concluding that the SPD was not a part of the ERISA plan); *see also Prichard*, 783 F.3d at 1169 ("[P]articularly in the context of health plans, the SPD is sometimes argued to be the plan; that is, to serve simultaneously as the governing plan document. For certain types of plans, notably health plans, plan sponsors frequently take a 'consolidated' approach to plan document drafting where the plan document and the SPD take the form of a single document.") (quoting 3 ERISA Practice and Litigation § 12:38). Here, Netflix treats its summary plan descriptions as part of the plan itself, and Zavislak has not identified any conflict between any of the summary documents and the 2020 Wrap Plan Document. PI Opp'n at 3.

The Court finds that Zavislak has not demonstrated a likelihood of success on the merits. When a plaintiff has failed to show a likelihood of success on the merits, the Court need not consider the remaining *Winter* factors. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Mandatory injunctions such as the one Zavislak seeks are disfavored, and he therefore must satisfy a higher burden of "establish[ing] that the law and facts *clearly favor* [his] position."[2] *Id.* The

---

[2] *See also iCall, Inc. v. Tribair, Inc.*, No. C-12-2406 EMC, 2012 WL 5878389, at *4 (N.D. Cal. Nov. 21, 2012) (discussing other circuits' heightened standard of review for injunctions that would grant movant substantially all the relief sought).

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.
9

Court finds that he has not done so here.

Accordingly, the Court DENIES the motion for a preliminary injunction.

### III. DEFENDANT'S MOTION TO DISMISS

Netflix moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). MTD/MSJ at 1.

#### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal*

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.

*Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

### B. Discussion

The Court addresses each of Zavislak's claims in turn.

#### 1. Claim 1

Zavislak asserts his first claim under 29 U.S.C. § 1132(a)(1)(A) and (c)(1)(B) for failure to supply information requested pursuant to 29 U.S.C. § 1024(b)(4). Subsection 1132(c)(1)(B) states:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). Here, Zavislak pleads that: Netflix is the plan administrator (Am. Compl. ¶ 3); that he made a written request dated January 1, 2021 and postmarked January 4, 2021 to Netflix for "documents governing the operation of the respective plan (e.g., formal plan document, trust agreement, insurance contract, contract of coverage, third party administration agreement, and in general, any document that the claims administrator or named fiduciary refers to when making benefit determinations under the respective plan)" under § 1024(b)(4) for the 2021 calendar year (*id.* ¶ 9); that Netflix did not provide him copies of any documents until February 24, 2021 (*id.* ¶ 11); that the documents he received referred to yet other documents that Netflix had not provided (*id.* ¶¶ 15-17, 25, 28); and that when he requested these other documents, Netflix

1  refused to provide them because, according to Netflix, the other documents did not exist and/or
2  because Netflix believed it was not legally obligated to provide them (*id.* ¶¶ 19-21, 23, 27, 31, 38).
3  Netflix offers a host of arguments for why Zavislak fails to state a claim for money
4  damages: (1) it provided all documents he was entitled to; (2) its 30-day compliance period was
5  effectively tolled or excused under the U.S. Department of Labor's Employee Benefits Security
6  Administrations Disaster Relief Notice 2020-01; (3) the Court should grant discretionary relief
7  under § 1132(c)(1)(B) instead of monetary relief; (4) that the documents Netflix provided Zavislak
8  were complete; (5) § 1024(b)(4) only requires disclosure of currently operative documents; and (6)
9  § 1024(b)(4) does not require disclosure of claims procedures documents or third-party claims
10 administration documents.  MTD/MSJ at 7–22.  These arguments do not directly address the
11 adequacy of the complaint's allegations so much as they offer alternative reasons for why Zavislak
12 cannot prevail on the merits.  The ultimate issue underlying all of Netflix's arguments in favor of
13 dismissal is whether it was required to provide any additional documents beyond the seven that it
14 did—a question that is better suited to consideration on summary judgment.  *See infra* Section IV.
15 The Court finds that Zavislak has adequately pled claim 1.

### 2. Claim 2

17 The basis for claim 2 is the same as claim 1, except instead of money damages, Zavislak
18 seeks injunctive relief.  MTD/MSJ at 22; Opp'n to Def.'s MTD/MSJ at 8.  Netflix argues that
19 Zavislak fails to state a claim for injunctive relief for failure to supply information requested
20 pursuant to § 1024(b)(4) because Netflix was not required to disclose any additional plan
21 documents.  MTD/MSJ at 22.  For the same reasons described above, the Court finds that Zavislak
22 has adequately pled claim 2.

### 3. Claim 3

24 Zavislak's third claim asserts that Netflix is in violation of 29 U.S.C.A. § 1102(a)(1),
25 which requires every employee benefit plan to be "established and maintained pursuant to a

written instrument."[3]  Netflix contends that it has, in fact, operated the Plan according to a written instrument.  MTD/MSJ at 22–24.

"[P]lan administrators appear to have a statutory responsibility actually to run the plan in accordance with the currently operative, governing plan documents and thus an independent incentive for obtaining new amendments as quickly as possible and for weeding out defective ones."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995).  Here, Zavislak pleads that he sought the documents governing the Plan (Am. Compl. ¶ 9); that the documents he received referred to yet other documents that Netflix had not provided, including "contracts" (*id.* ¶¶ 15.c, 25-31); and that when he requested Netflix's contracts with claims administrators, Netflix refused to provide them because it did not believe production of those documents was required under § 1024(b)(4), stating "[t]here are no additional documents for disclosure" (*id.* ¶¶ 22-23, 25-31).

Zavislak also pleads that the 2020 Wrap Plan Document states that the official "Plan Document" includes documents listed and incorporated by reference in its Appendix 5, which references three insurance policies: Collective Health + Anthem STRM: 3328649, Delta Dental STRM: 3328649, and VSP 12130543.  *Id.* ¶¶ 16-17; Armanino MSJ Decl., Ex. A at 48–49.  Upon inquiry, Netflix stated, "The documents referenced in that appendix are no longer available and not in use; and as such, we need to update the Adoption Agreement."  Am. Compl. ¶ 19; Armanino MSJ Decl., Ex. J at 2.  Netflix later further clarified that

> there are no policy documents for the Collective Health + Anthem STRM, Delta Dental, or VSP plans.  The policies listed for those plans in Appendix 5 were in effect prior to 2020 and when the Plan was amended and restated effective January 1, 2020 the policy numbers were inadvertently still referenced in Appendix 5.  Those policies no longer exist.

---

[3] Zavislak does not bring a claim asserting that Netflix, as the Plan fiduciary, has not acted "in accordance with the documents and instruments governing the plan" under 29 U.S.C. § 1104(1)(a)(D).

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.
13

Am. Compl. ¶ 20; Armanino MSJ Decl., Ex. J at 2. Zavislak alleges that the 2020 VSP Vision Evidence of Coverage document Netflix provided to him also references policy number 12130543 with an effective date of January 1, 2020 for a term of 36 months. Am. Compl. ¶ 21; Armanino MSJ Decl., Ex. D at 8. The Court finds that he has alleged sufficient facts to plausibly suggest that Netflix is not actually operating under the written terms of the current governing Plan documents.

Netflix argues that the references in Appendix 5 are the result of a "scrivener's error" that does not reflect beneficiaries' reasonable expectation of benefits and which other courts have refused to enforce. MTD/MSJ at 23–24. Netflix relies principally on *Young v. Verizon's Bell Atl. Cash Balance Plan*, a Seventh Circuit decision concerning a drafting error in a pension plan that, if enforced literally, would have given pensioners greater benefits than expected. 615 F.3d 808 (7th Cir. 2010). The Seventh Circuit affirmed the district court's grant of equitable reformation of the plan to correct the error, concluding that "ERISA's rules not so strict as to deny an employer equitable relief from the type of 'scrivener's error' that occurred here." *Id.* at 812. *Young* concerned the payout of benefits and a plan fiduciary's request for equitable relief in the form of reformation, but neither of those forms of relief are what Zavislak seeks here. Am. Compl. at 11 (Prayer for Relief seeking "[enforcement of] Netflix's obligation under 29 U.S.C. § 1102(a)(1) by ordering Netflix to maintain the Plan pursuant to a written instrument and enjoining Netflix from maintaining the Plan according to oral or informal written modifications not formally adopted under the Plan's specified amendment procedure"). It may very well be that the references in Appendix 5 of the 2020 Wrap Plan Document are scrivener's errors, but that is a question better suited to summary judgment than a motion to dismiss.

Accordingly, the Court finds that Zavislak has adequately pled facts to support a claim that Netflix's Plan is not being maintained pursuant to a written instrument.

The Court DENIES Netflix's motion to dismiss.

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.

## IV.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In the alternative, Netflix moves for summary judgment on all claims.  MTD/MSJ at 1.

### A.      Legal Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if there is sufficient evidence that a reasonable fact finder could find for the nonmoving party.  *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984 (N.D. Cal. 2019).  A fact is "material" if it could change the outcome of the case.  *Id.*  The Court must read the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Where the moving party will bear the ultimate burden of proof at trial, the moving party "must prove each element essential of the claims upon which it seeks judgment by undisputed facts" in order to succeed.  *eOnline Glob.*, 387 F. Supp. 3d at 984 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995).  This showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *t'Bear v. Forman*, 359 F. Supp. 3d 882, 905 (N.D. Cal. 2019) (quoting *First Pac.*, 891 F. Supp. at 513).  Only then must the nonmoving party "present significant probative evidence tending to support its claim or defense" to defeat the motion.  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party will not bear the ultimate burden of persuasion at trial, then it must carry both the burden of production and the burden of persuasion on its motion for summary judgment.  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).  To carry the burden of production, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim . . . or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102–03.  To successfully carry the burden of persuasion, the moving party must

show the court that no genuine dispute of material fact exists. *Id.* at 1102. "If the moving party does not carry its initial burden of production, then the nonmoving party need not produce any evidence to defeat the motion. But, if the moving party does carry the burden of production, then the nonmoving party must identify with reasonable particularity enough evidence supporting its claim or defense to create a genuine dispute of material fact to defeat the motion." *eOnline Glob.*, 387 F. Supp. 3d at 984 (citations omitted) (citing *Nissan Fire*, 210 F.3d at 1102–03). Otherwise, the moving party will win on its motion. *Nissan Fire*, 210 F.3d at 1103.

In both types of motions, the evidence presented by the nonmoving party must be enough for a jury to return a verdict for the nonmoving party. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "If the nonmoving party's 'evidence is merely colorable or is not significantly probative,' then summary judgment may be granted." *eOnline Glob.*, 387 F. Supp. 3d at 984.

**B.   Discussion**

Netflix's summary judgment motion is premised upon the assertion that it is not required to provide the third-party claims administration agreements because, according to Netflix, those contracts concern purely logistical claims administration procedures and do not reflect Zavislak's substantive rights and responsibilities under the Plan. MTD/MSJ at 7–22. However, those claims administration agreements are not in the evidentiary record before the Court.[4] Without having the agreements available to review their terms and language, the Court cannot determine whether they bear on Zavislak's rights and responsibilities under the Plan and thus ought to be produced under § 1024(b)(4). Because there remains a genuine dispute of material fact, the Court DENIES Netflix's motion for summary judgment.[5]

---

[4] *See supra* n.1.

[5] *See* Standing Order for Civil Cases at Section V.A.1 (limiting each party to one motion for summary judgment, partial summary judgment, or summary adjudication).

Case No.: 5:21-cv-01811-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNC., MOT. TO DISMISS/MOT. FOR SUMM. J., AND MOT. TO STAY DISC.
16

## V. MOTION TO STAY DISCOVERY

Netflix seeks a stay of discovery pending the Court's ruling on its motion to dismiss, or in the alternative, for summary judgment. Dkt. No. 31. The Court has now ruled on Netflix's dispositive motion and therefore DENIES as moot the motion for a stay.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Zavislak's motion for preliminary injunction. The Court further DENIES Netflix's motion to dismiss, or in the alternative, for summary judgment. The Court DENIES as moot Netflix's motion to stay discovery.

The parties are directed to submit a proposed case schedule by **August 30, 2021**. If the parties are unable to agree on a proposed schedule, they may submit competing proposals on which the Court will rule.

**IT IS SO ORDERED.**

Dated: August 16, 2021

EDWARD J. DAVILA
United States District Judge