Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Catherine A. Scott (SBN 334420)
catherine.scott@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant*
*Netflix, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

Mark Zavislak,

Plaintiff,

v.

Netflix, Inc.,

Defendant.

Case No. 5:21-cv-01811-EJD

**JOINT STATEMENT REGARDING DEFENDANT'S PROPOSED PROTECTIVE ORDER**

Judge: Hon. Nathanael M. Cousins
Courtroom: 5 – 4th Floor

Pursuant to the Honorable Nathanael M. Cousin's Civil Standing Order ("Order"), the parties submit this Joint Statement Regarding Defendant's Proposed Protective Order. Defendant desires an unspecified non-model protective order be put in place for material produced in discovery. The parties disagree on the scope of protective order to be applied. On September 10, 2021, the parties met and conferred in an attempt to reach an agreement. Three issues remain unresolved: 1) whether confidential documents may be allowed to be designated "attorneys' eyes only," 2) the procedure, mechanisms, and timing for resolving confidentiality designation disputes, and 3) the method of designation of confidential materials.

**Plaintiff's Proposal and Argument**

**Plaintiff's proposed compromise** with respect to all issues: application of the Model Stipulated Protective Order for Standard Litigation.

1. **The Model Stipulated Protective Order for Standard Litigation is sufficient to protect the interests of Plaintiff, Netflix, and any third-parties.** The documents that Netflix insists must be completely "Attorney's Eyes Only" (AEO) are claims administration agreements that are regularly filed in court and made available to the public at large with minimal redactions limited to pricing. An exemplar of an agreement between an employer and Anthem Blue Cross Life and Health Insurance Company (one of the claims administrators in this case) may be found on the public docket. *See, e.g.*, Administrative Services Agreement between ViaSat, Inc. and Anthem Blue Cross Life and Health Insurance Company, *Dual Diagnosis Treatment Ctr. v. Blue Cross of Cal.*, Case No. 15-cv-00736-DOC, Dkt. No. 977-1 (C.D. Cal. Jul. 13, 2016). Numerous other examples of claims administration agreements with other claims administrators may be found as well on the public dockets. *See, e.g.*, *id.*, Dkt Nos. 682-5, 682-7, 682-12, 682-14, 693-5, 916-3, 945-3, 977-1, 980-1, 985-2, 995-2, 999-1, 1001-1, 1010-3, 1011-3, 1017-28, 1018-3, 1019-2, 1021-2, 1022-3, 1027-21, 1028-4, 1030-2, 1032-3, 1033-3, 1034-2, and 1036-1. All were filed publicly without any protective order in place and include at least one agreement in which the parties explicitly agreed to keep the terms confidential. *See id.*, Dkt. No. 682-7 at 22.

2. Netflix has failed to identify a single case where a court has required an AEO designation for ***any*** terms of a claims administration agreement, let alone the entire document.

The protections of the Model Stipulated Protective Order for Standard Litigation will be sufficient to protect any confidential pricing information from public disclosure.

3. As an individual, Plaintiff is neither a competitor to Netflix, nor in the market for a large group healthcare plan. Plaintiff as a signatory to the protective order will carefully follow its terms, and Netflix offers nothing but speculation to suggest otherwise. Furthermore, Plaintiff is also a licensed attorney with direct experience in safeguarding valuable industry trade secrets.

4. Denying Plaintiff access to discovery would substantially impair prosecution of Plaintiff's claims. This is a case between a single individual with one attorney and a very large multinational corporation with a large team of attorneys and vendors. To keep costs down, Plaintiff assists his counsel as much as possible. Restricting Plaintiff from access to these agreements would impair his ability to make informed decisions about this litigation and to ensure the quality of his representation. Despite Defendant's speculative and false exposition in its paragraph 3, *infra*, as an accomplished software engineer, Plaintiff intends merely to organize and search the documents so as to avoid the cost and disclosure risk inherent in third-party vendor serviced e-discovery. Plaintiff will permanently delete any data required by any order.

5. Even under the more restrictive "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets," Plaintiff would be still entitled to receive AEO as the signatory individual Receiving Party. *See* § 7.3 (limiting disclosure by the Receiving Party but not limiting disclosure to the Receiving Party himself). Even if Plaintiff were fictitiously treated as an entity, he would still be entitled to access because he is someone "who has no involvement in competitive decision-making [and] to whom disclosure is reasonably necessary for this litigation." *See* § 7.3(b).

6. **No modification to the model order's mechanism for resolving disputes is needed.** Netflix's proposal to establish a deadline for confidentiality designation objections serves no purpose. Rather than conserving judicial and litigant economy, it would invite additional discovery motion practice as a predictable consequence to denying Plaintiff access to case dispositive documents. Furthermore, when faced with a nearly identical proposal, a sister court in the Ninth Circuit easily rejected it.

> Baum objected to State Farm's proposed 20-day window to challenge the confidentiality of documents or information produced during discovery. Baum argues that the clause "within 20 days of delivery of the document or information" serves no purpose and should be deleted. This court agrees. . . .
>
> It does not appear that State Farm would suffer a greater harm, if it suffered harm at all, if a document was "declassified" at trial than it would suffer if the document was successfully challenged during discovery.

*Baum v. State Farm Mut. Auto. Ins. Co.*, Case No. 15-cv-1917, at 6 (D. Nev. Aug. 16, 2016).

7. **Netflix's proposal to mass designate entire documents as AEO would further compound the prejudice to Plaintiff.** As the Model Stipulated Protective Order states:

> The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions . . . for which protection is not warranted are not swept unjustifiably within the ambit of this Order.
>
> *Mass, indiscriminate, or routinized designations are prohibited.*

Section 5.1 (emphasis added). Netflix proposes to engage in precisely the behavior the model order seeks to prohibit—and fails to offer good cause for such a proposal that would unnecessarily encumber the case development progress and expose Plaintiff to unnecessary expenses and burdens.

**<u>Defendant's Proposal and Argument</u>**

1. **Some Confidential Documents Should Be Protected as Attorney's Eyes Only.** Netflix proposes that five documents subject to the protective order be designated as Attorney's Eyes Only, to be disclosed only to the receiving party's attorney. These documents are the claims administration agreements ("Claims Agreements"), which contain confidential pricing and confidential terms, including for the provision of computer leasing arrangements and other services. Claims Agreements are not distributed to plan participants or other third parties. As Judge Davila held in the order denying plaintiff's motion for a preliminary injunction:

> While the Ninth Circuit has not ruled decisively on the question, the Court notes that it has affirmed a district court's conclusion that an administrative services agreement was not subject to disclosure under § 1024(b)(4) where the agreement governed only the relationship between the plan provider and claims administrator, and not the relationship between the plan participants and the provider. *Hively v. BBA Aviation Benefit Plan,* 33 F. App'x 510, 511 (9th Cir. 2009). Moreover, another court in this District has rejected a plan participant's request under

> § 1024(b)(4) for "any and all contracts or other documents under which [the plaintiff's] Long Term Disability Plan has been established, operated, or administered" and "any and all documents setting forth all financial arrangement between the Plan and/or Wink Communications, Inc. and/or UNUM, (i.e., documents relating to payment of premiums, processing and/or monitoring of Plan claims, etc.).") *Corby v. Unum Life Ins. Co. of Am.*, No. C 09-5890 WHA, 2010 WL 3768040, at *8–9 (N.D. Cal. Sept. 21, 2010). The case law therefore does not appear to favor Zavislak's position that he is legally entitled to the claims administration agreements, regardless of their content, and he therefore appears unlikely to succeed on that aspect of his claims.

Dkt No. 44 at 7:02–15.

2. Attorney's Eyes Only protective orders are governed by *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). Judge Beeler recently explained *Brown Bag's* holding:

> to determine whether a party's in-house attorney should be permitted to view an opposing party's confidential information, courts must balance (1) the risk to the party opposing disclosure of the inadvertent disclosure of its confidential information against (2) the risk to the party seeking disclosure that protection of the confidential information would impair the prosecution of its claim.

*Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC (LB), 2012 U.S. Dist. LEXIS 23103 (N.D.Ca. Feb. 23, 2012).

3. A heightened risk of wrongdoing and prejudicial harm exists for Netflix and the third-party service providers. During counsel's meet and confer, plaintiff's counsel disclosed that his client, a software engineer, was constructing a software program into which he intended to input all discovery documents, including the Claims Agreements, to map the documents and interrelate their content. Plaintiff's intent to map highly confidential documents on a personal computer, on an untested "software program," with unknown security protections, is reckless handling of confidential documents and increases the likelihood of improper and harmful dissemination of the sensitive material. The documents will forever be housed in the program.

4. First, there is concrete evidence that a real risk exists to the disclosing parties that inadvertent disclosure would cause substantial harm. The third-party service providers submitted detailed declarations that these agreements are highly confidential and are not distributed to third parties, much less plan participants. Dkt. Nos. 22-1–22-7. These five contracts contain

confidential and proprietary pricing information, claims services, and other commercial arrangements such as network sharing arrangements. Disclosure of these contracts could be highly prejudicial and harmful to the third-party service providers' competitive interests.

5. Second, balanced against this concrete showing of real risk of substantial harm from inadvertent disclosure, plaintiff cannot demonstrate that protection of the confidential information would impair the prosecution of his claim. The issue here is whether the Claims Agreements are Plan documents as defined by ERISA § 104, 29 U.S.C. § 1024(b)(4). That inquiry essentially turns on whether the documents are necessary, especially in light of the over 400 pages of Plan documents already produced, to understand Plan coverages and obligations, an inquiry that plaintiff's counsel can analyze without the input of his client. In fact, plaintiff's counsel has consistently failed, over multiple emails and conferences, to articulate any reason why plaintiff needs to receive copies of the confidential documents rather than have his counsel review their contents. The risks of dissemination and misuse of Netflix's confidential and sensitive material outweigh any limited benefit plaintiff would receive from personally handling the documents. Thus, Netflix proposes a rational approach of designating the agreements as Attorney's Eyes Only and restrict them to attorney and Court use.

6. **A Mechanism for Resolving Disputes.** Netflix proposes 40 days to object to a confidential designation rather than leave that issue open ended as plaintiff proposes. For litigant and judicial economy, a party should be required to object to confidentiality designations. There should be a cut-off for challenging a designation of confidentiality rather than sit with the idea.

7. **Entire Documents Should be Designated as Confidential:** Netflix proposes that the protective order permit confidential designation, in good faith, of entire contracts, rather than pages or lines. The Claims Agreements are confidential as a whole. Forcing Netflix to separate lines or sections as confidential, when the entire documents are characterized as confidential, is contrary to the agreements' confidential purpose and protections. For such documents, particularized designation would waste judicial and litigant economy, not only by forcing Netflix to initially dissect their contracts with third-party vendors, but also by opening the floodgates to an ongoing accumulation of discovery objections and disputes.

Respectfully submitted,

DATED: September 16, 2021

BAKER BOTTS LLP

/s/ *O. Shane Balloun*
O. Shane Balloun
**BALLOUN LAW PROFESSIONAL CORPORATION**
Bellingham Cruise Terminal
355 Harris Avenue, Suite 201
Bellingham, WA 98225
Phone: 360.318.7778
Fax: 360.483.5960
o.shane@ballounlaw.com

*Attorney for Plaintiff Mark Zavislak*

By: /s/ *Christopher Rillo*
Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
**BAKER BOTTS LLP**
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Catherine A. Scott (SBN 334420)
catherine.scott@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant Netflix, Inc.*

**ATTESTATION**

I hereby attest that I have obtained concurrence of the above noted signatories as indicated by a "conformed" signature (/s/) within this e-filed document.

DATED: September 16, 2021

BAKER BOTTS LLP

By: /s/ *Christopher Rillo*

Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Catherine A. Scott (SBN 334420)
catherine.scott@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant Netflix, Inc.*

.