O. Shane Balloun (CalBar #281175)
Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778
(360) 483-5960 (fax)
o.shane@ballounlaw.com

*Attorney for Plaintiff*
*Mark Zavislak*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Mark Zavislak,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Netflix, Inc.,<br><br>　　　　　Defendant. | Case No. 5:21-cv-01811-EJD<br><br>**DISCOVERY LETTER JOINT STATEMENT REGARDING DEFENDANT'S NONPRODUCTION IN RESPONSE TO PLAINTIFF'S RFP 7**<br><br>Judge:　Hon. Nathanael M. Cousins<br>Courtroom: 5 – 4th Floor |

Pursuant to the Honorable Nathanael M. Cousin's Civil Standing Order ("Order"), the parties submit this *Discovery Letter Joint Statement Regarding Defendant's Nonproduction in Response to Plaintiff's RFP 7*. On November 1, 2021, the parties met and conferred via video conference regarding these issues.

**Plaintiff's Argument**

1. **RFP 7: "Any Plan Coverage documents relating to the benefits to be provided to Plaintiff under the Plan, including his vision, dental, and medical benefits.":** Netflix failed to and refuses to provide the full set of Plan Coverage documents relating to Plaintiff's medical benefits on the specious grounds that they are irrelevant. Per the RFP:

> "Plan Coverage" means the benefits provided or intended to be provided under the Plan or the procedures required or intended to be required under the Plan. Without limitation on the term "intended" as used in this paragraph, "intended" includes any position or understanding of any Plan Fiduciary regarding Plan Coverage, regardless of whether the position or understanding was reduced to writing and regardless of whether the position or understanding was effectively embodied in an authorized, written amendment to the Plan.

As shown below, Plaintiff has already identified the existence of relevant unproduced Plan Coverage documents. Netflix must produce them—and go further and produce the complete set.

2. As a preliminary matter, Netflix states below that it "objected to plaintiff's overly broad definition of 'Plan Coverage' in its response—an objection plaintiff never raised or discussed in the meet and confer" and then argues that the 'definition' above is improper and misleading. Despite Netflix's statement that Plaintiff's definition of "Plan Coverage" was never raised, Plaintiff provided Netflix with a draft of the very arguments that Netflix takes issue with on October 6, 2021, more than three weeks before the meet-and-confer. Despite Netflix's naked assertion that this definition is "overbroad," it is narrowly targeted to include highly relevant documents that Netflix has inexplicably decided to withhold in discovery.

3. Collective Health (CH) recently tendered Plaintiff additional responsive plan documents—including specific coverage information about preventive benefits—documents not provided by Netflix in discovery. For example, nearly all the information contained in the "Preventive Care Guidebook" was missing from the sole medical benefits document produced by Netflix. CH has also stated that the coverage of preventive care benefits *vel non* in that document is

dictated by Netflix, and in fact CH used this as the basis to deny a preventive benefit claim made by Plaintiff, and admitted having no discretion to do otherwise—as directed by Netflix.

4. In its contract with CH, CH agreed to "receive, process, and adjudicate medical claims … in accordance with the terms of each respective medical plan, as described during implementation…" The contract defines this set of "Implementation Documents:"

> Concurrently or within thirty (30) days after mutual execution of this Agreement, Collective Health will begin implementation with Plan Sponsor and will provide Plan Sponsor with tools, templates, guides timelines and other documents as may be amended from time to time (together, the "**Implementation Documents**") to further define and refine the Services within the bounds of this Agreement.

Because CH and Netflix have agreed to adjudicate Plaintiff's benefit claims based on these Implementation Documents, and CH has admitted that these documents are used to determine coverage of preventive benefits, they must be searched and produced in response to RFP 7.

5. Netflix admits below that it is in possession of "Implementation Documents" that instruct CH as to what is and is not covered under the plan. Netflix also does not deny that, according to its contract with CH, these Implementation Documents form the basis of the medical plan that CH uses to administer Plaintiff's medical claims. As a result, these documents go to the central issue of this case which is whether Netflix has produced the correct and complete set of plan documents, and whether Netflix has been operating the plan according to a written instrument. (Netflix has no objection to their production other than relevance.)

6. Despite Netflix's irrelevant and unavailing argument below that CH "created and controls" the Preventive Care Guidebook, Netflix does not deny that Netflix was in possession of it and refused to turn it over, which is the only issue that matters in this discovery dispute. Netflix makes the astonishing assertion below, without authority, that now because "Plaintiff already has this document" it need not produce it in discovery. Plaintiff brings this document to the Court's attention merely as an example of an important document in Netflix's possession that Netflix **failed to search for and produce** despite falling squarely in scope. Plaintiff is precisely seeking the Implementation Documents that "settled the Plan design," including the exact instructions given to CH regarding preventive care and the prescription drug formulary.

7. Even if Netflix was not in possession of the plan document, Netflix remains responsible for its production under ERISA as plan administrator. *See* § 104(b)(4). Moreover, the CH-Netflix contract specifically allows Netflix to obtain these documents, something Netflix refused and continues to refuse to do. The RFP specifically requested documents that Netflix has a right to obtain.

8. In sum, Netflix failed to produce and continues to withhold the very plan document that CH used to deny one of Plaintiff's benefit claims, despite it falling squarely within the scope of RFP 7, in addition to other documents CH admitted it relies on to administer the plan. The Court need not be convinced at this stage that these sought-after Implementation Documents are plan documents, only that they may be relevant to Plaintiff's complaint. Accordingly, Plaintiff respectfully requests the Court compel Netflix to fully respond to RFP 7.

9. Below, Netflix's sudden jibe to a new point of sail that Plaintiff's denied claims are now irrelevant is an incoherent reversal from its previous positions and is belied by its current discovery posture. *See* Dkt. # 22 at 15:20–16:2; Dkt. # 22-1, at ¶ 13; Hr'g Transc. 17:6–9 (Jul. 22, 2021); *see also* Dkt. # 49, at ¶ 60. Defendant's Interrogatory # 10, RFP # 8, and RFA ## 12, 25 ask about unpaid/disputed benefits claims and to produce relevant documents.

**Defendant's Argument**

1. Plaintiff continues to misstate the facts, and, with no evidence of the relationship between Netflix and third-party administrator Collective Health (CH), misstates their respective duties and documents. Netflix has fully delegated the duty of administering the Plan to CH; accordingly, CH has independently written internal documents and policies that are wholly maintained and controlled by CH. Netflix is not withholding documents, but rather explained to Plaintiff the delegation process and that CH's documents were not responsive, were not Plan documents, do not provide coverages, do not govern the Plan, and are the responsibility of CH. Subsequently, Plaintiff has properly served a subpoena duces tecum on CH.

2. **RFP 7:** Plaintiff requests documents far outside the scope of discovery. Netflix objected to plaintiff's definition of "Plan Coverage" and RFP No. 7 for being overly broad, exceeding the scope of the issues, and seeking documents not relevant to the subject matter nor

reasonably calculated to lead to admissible evidence.[1] Plaintiff never raised the objections; thus, the use of his definition above is improper. Next, the limited issues are whether *claims administration agreements* are Plan documents under 29 U.S.C. § 1024(b)(4) and whether a scrivener's error—of an outdated plan number erroneously left in the Wrap Plan—constituted a failure by Netflix to operate its Plan pursuant to its written instrument, the Wrap Plan. This case is not about claims disputes (for which ERISA has separate remedies and processes). Netflix agreed to produce Plan documents that it controlled that provide coverage for welfare benefits. Neither the Preventative Care Guidebook (PCG) nor "Implementation Documents" are such documents.

3. Plaintiff's claim that Netflix adjudicates claims is a fallacy: Netflix has no such role. Netflix has fully delegated to CH all authority to interpret the Plan and perform administrative and adjudication functions. First, plaintiff admitted to such delegation as early as January 4, 2021. *See* Plaintiff's Email to CH, Zavislak-000481 ("my plan appears to delegate certain claims administration responsibilities to [CH]"). Next, provisions in Netflix's Wrap Plan authorize the delegation of fiduciary responsibility. *See* Netflix_00219, 00223 ("The Plan Administrator may delegate all or a portion of its responsibilities to one or more agents or to a committee. Such delegation includes discretionary authority unless that authority is specifically limited in the delegation…."). And Netflix and CH's Services Agreement gives CH sole fiduciary responsibility to interpret the Plan, administer and pay claims, and adjudicate Plan and claim disputes. *See* Netflix_00512 ("[CH] shall perform its medical claims administration services in accordance with this Agreement and the customary interpretation of the Plan documents….").

Such delegation is fully authorized by ERISA § 405(c)(1)–(2), 29 U.S.C. § 1105(c)(1)–(2). Further, delegation of claims adjudication is required to protect the claims administration process. *See Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348-51 (2008) (finding that a plan funder who also adjudicates benefit disputes is a conflict of interest that precludes the *Firestone* preferential standard of review). To avoid such conflicts when adjudicating claims, plan

---

[1] The Court has limited Plaintiff's broad discovery requests in a past ERISA case. *See Zavislak v. Google Inc. Welfare Benefit Plan*, No. 14-CV-04802 NC, 2015 WL 909518, at *4 (N.D. Cal. Feb. 27, 2015) (noting that Congress sought "to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place" (quoting *Conkright v. Frommert*, 559 U.S. 506, 517 (2010))).

sponsors delegate such processes to third parties; accordingly, Netflix can be a plan administrator without being responsible for receiving, processing, or adjudicating claims, nor implementing guidelines or templates for such services, nor controlling documents relating to such services, processes or guidelines, nor coding documents with medical payment codes.

Netflix has already produced all Plan documents that provide coverages in its control. Plaintiff cites no authority that documents generated and controlled by CH are Plan documents. Netflix's Wrap Plan is the touchstone of benefits information; the CH HSA SPD contains the information sought in Request 7[2] and repeatedly directs beneficiaries to access more information via internet links or CH, the custodian of such information. *See* Netflix_ 00292, 00301 ("If you have questions about how your unique medical needs may be covered by the plan, contact [CH]….contact [CH] for more information on the specific procedure and diagnosis codes that comprise your preventive benefits."). Netflix has no further documents responsive to the request.

Contrary to plaintiff's statements, CH solely authored the PCG and Netflix played no role in its production. CH prepared it to assist beneficiaries with questions. CH controls this PCG, does not normally provide it to clients such as Netflix, but provides it directly to beneficiaries upon request. Plaintiff obtained the PCG from CH. Plaintiff produced the PCG in discovery to Netflix. Moreover, the CH contract only requires CH to produce "summaries" of its claims procedures, not actual documents such as the PCG.

The "Implementation Documents," which include a summary of benefits, decision log, and matrix, are solely generated, prepared and controlled by CH and describe services provided to Netflix. CH never provides these organizational documents to beneficiaries. Only *after* Netflix has settled the Plan design—which is contained in the Wrap Plan and SPD—does CH use these documents to build out CH's systems internally. CH adjudicates claims according to the Wrap Plan, which is the basis for the health plan. These documents are not the basis of the health plan nor the Wrap Plan, are not Plan documents, provide no coverages, and are controlled by CH.

---

[2] The provided 2021 Netflix HSA SPD includes benefits information for: preventive care (*see* Netflix_ 00288 to 00289); travel expenses (00296 to 00297, 00319 to 00320); diabetes services (00299 to 00300); routine eye care services (00302); out-of-network breast pumps (00312); preferred, non-preferred and excluded medications (00321 to 00323); in and out-of-network care (00279 to 00281); prior authorization (00285 to 00287); and authorized representatives (00333).

|   |   |
|---|---|
|  | Respectfully submitted, |
| DATED: December 16, 2021 |  |
|  | BAKER BOTTS LLP |
| /s/ *O. Shane Balloun* | By: /s/ *Chistopher Rillo* |
| O. Shane Balloun | Christopher Rillo (SBN 112009) |
| **BALLOUN LAW** | christopher.rillo@bakerbotts.com |
| **PROFESSIONAL CORPORATION** | **BAKER BOTTS LLP** |
| 355 Harris Avenue, Suite 201 | 101 California Street, Suite 3600 |
| Bellingham, WA 98225 | San Francisco, California 94111 |
| Phone: 360.318.7778 | Telephone: (415) 291-6200 |
| Fax: 360.483.5960 | Facsimile: (415) 291-6300 |
| o.shane@ballounlaw.com |  |
|  | Catherine A. Scott (SBN 334420) |
| *Attorney for Plaintiff* | catherine.scott@bakerbotts.com |
| *Mark Zavislak* | **BAKER BOTTS LLP** |
|  | 1001 Page Mill Road, Bldg. One Suite 200 |
|  | Palo Alto, California 94304 |
|  | Telephone: (650) 739-7500 |
|  | Facsimile: (650) 739-7699 |
|  |  |
|  | *Counsel for Defendant* |
|  | *Netflix, Inc.* |

# ATTESTATION

I hereby attest that I have obtained concurrence of the above noted signatories as indicated by a "conformed" signature (/s/) within this e-filed document.

DATED: December 16, 2021

By: /s/ *O. Shane Balloun*
O. Shane Balloun (CalBar #281175)

355 Harris Avenue, Suite 201
Bellingham, WA 98225
Phone: 360.318.7778
Fax: 360.483.5960
o.shane@ballounlaw.com

*Attorney for Plaintiff Mark Zavislak*

.