Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
**BAKER BOTTS LLP**
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Catherine A. Scott (SBN 334420)
catherine.scott@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant
Netflix, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| Mark Zavislak,<br><br>          Plaintiff,<br><br>   v.<br><br>Netflix, Inc.,<br><br>          Defendant. | Case No. 5:21-cv-01811-EJD<br><br>**DISCOVERY LETTER JOINT STATEMENT REGARDING PLAINTIFF'S CHALLENGES TO DEFENDANT'S CONFIDENTIALY DESIGNATIONS**<br><br>Judge:   Hon. Nathanael M. Cousins<br>Courtroom: 5 – 4th Floor |

Pursuant to the Honorable Nathanael M. Cousin's Civil Standing Order, the parties submit this *Discovery Letter Joint Statement Regarding Plaintiff's Challenges to Defendant's Confidentiality Designations*. On December 9, 2021, Plaintiff formally challenged Defendant's confidentiality designations and redactions of its documents produced during discovery. Pursuant to the Protective Order, Dkt. No. 64, the parties met and conferred on December 16, 2021. Defendant now requests the Court rule on Defendant's confidentiality designations and redactions.

**Defendant's Argument**

1. Netflix's redactions and confidentiality designations are proper and justified. Netflix respectfully requests the Court retain them. Netflix produced 805 pages of documents. Of these, only 42 pages have *specific portions* designated as confidential or have redactions, all of which are found in claims administration agreements—business contracts exclusively between Netflix and third-party administrators that are actively kept as confidential and normally not disclosed to participants. Despite their limited nature and number, Plaintiff broadly challenged the redactions and designations. Netflix responded to these challenges in writing by email on December 9. Netflix, in good-faith, clarified the designations and agreed to review them further with the parties, including with Vision Service Plan. Plaintiff refused to accept Netflix's need to retain any of the *minimal* confidentiality provisions. Plaintiff's unsupported attempt to issue a blanket challenge to any of these good-faith designations is meritless, overbroad, and frivolous.

2. **Redactions:** Netflix strictly followed the Court's Order permitting Netflix to redact "the confidential pricing and terms." Dkt. No. 63 at 2:23–24. Plaintiff misstates this Order and argues that Netflix can redact only the "prices." Netflix explained to plaintiff that pricing is not a single word or number but is often contained in paragraph format describing terms, conditions, applications, and other contingencies. Netflix properly redacted prices and pricing structure, contingencies, and context that could be used by business competitors to affect Netflix and its vendors' competitiveness in the marketplace. Netflix explained as such in its privilege logs, and counsel read aloud portions of the redactions during the meet and confer to demonstrate how they were a combination of pricing words and conditions. Netflix further offers that, if plaintiff agrees there would be no waiver by an in-camera review, it is willing to submit the unredacted

1    documents to the Court for in-camera review of the propriety of the limited redactions.

2         3.    **Confidentiality Designations:** Under the Protective Order, Netflix may designate as confidential any documents or tangible things that qualify for protection under Federal Rule of Civil Procedure 26, such as information involving trade secrets or confidential business or financial information. Netflix and its third-party administrators have consistently declared that the contracts are fully confidential and proprietary services agreements and are *not* given to beneficiaries as they are not parties to the contract nor do the contracts provide benefits or govern the Plan. *See,* e.g., Dkt. Nos. 22-1; 22-3; 22-5; 22-6; 22-7. Netflix has already narrowed the contracts to confidential sections that specifically protect proprietary, trade secret, and commercial information relating to services, operations, policies, partner coordination, pricing, and contingencies between Netflix and third parties, including information regarding agreements of those third parties with additional business partners, such as pharmacy administration services. These designations protect confidential information of not just Netflix, but also third-party administrators and their partners, none of which are a party to this litigation.

Contrary to plaintiff's misstatement that entire claims administration agreements are "regularly" made publicly available, courts repeatedly recognize that such sensitive and proprietary topics are grounds for maintaining confidentiality, particularly in cases of services agreements as well as less-formal ERISA documents.[1] Further, including or referencing "essential" or "critical" terms does not negate the contextual confidentiality of a provision. And courts have protected documents' confidentiality even when its information was allegedly previously disclosed without the protection of confidentiality orders. *Roberts v. Prudential Ins. Co. of Am.,* No. 12-CV-1085-L DHB, 2013 WL 1431725, at *9 (S.D. Cal. Apr. 9, 2013).

Netflix has compelling reasons and good cause to maintain the documents' confidentiality, as the likely harm resulting from removing the designations outweighs any potential benefit

---

[1] *See Watts v. Metro. Life Ins. Co.,* No. 09CV829 WQH (WVG), 2010 WL 11508844, at *1 (S.D. Cal. Oct. 7, 2010) (finding that claim management guidelines and a contract between Defendants and a third party vendor contain trade secret information which could be used by business competitors"); *Prudential,* No. 12-CV-1085-L DHB, 2013 WL 1431725, at *6 (noting that training materials, worksheets, guidelines and agreements governing relationships of a party have been considered confidential in ERISA cases).

to the public or plaintiff. Retaining *minimal* designations and redactions of *fully* confidential business contracts—documents produced only during the discovery process and unrelated to any issues in this case—would not harm the public interest.[2] Plaintiff's new demand to remove confidentiality designations directly contradicts his previous representations to the Court: that he had no interest in the administrative agreements' pricing, proprietary, or redacted information, or information *not required* for disclosure under 29 U.S.C. § 1024(b)(4).[3] Yet after being granted access to these documents, Plaintiff now requests the ability to release proprietary information. Plaintiff fails to explain his harm of having access to these contracts but being unable to publicly disseminate them, other than the burden of using them at trial. While restraints on discovery documents are separate from restraints at trial, such a burden would not outweigh the harm on Netflix and its third-party administrators if their confidential trade secrets and commercial information were publicly released and were used for improper purposes by business competitors. Netflix requests the Court retain the narrow, justified, and proper designations and redactions.

**Plaintiff's Argument**

1.    On December 2 and 6, Plaintiff's counsel sent short emails asking to discuss Netflix's redactions and confidentiality designations of whole pages. On December 9, Netflix sent an email clarifying its designations. Late that same day (11:28 p.m.), Plaintiff responded with a formal nine-page challenge ("Challenge") to Netflix's overbroad confidentiality designations, which explained Netflix's failures to comply with the protective order in granular specificity. Contrary to Netflix's misstatements above, Plaintiff only challenged a subset of Netflix's confidentiality designations in order to, *inter alia*, simplify the introduction of exhibits in upcoming depositions and prepare for dispositive motion practice and trial in which these documents will play a central role. Netflix never responded in writing, and in the meet and confer did not offer any substantive defense to its specific designations. Netflix even admitted that it did not know

---

[2] *See Prudential*, No. 12-CV-1085-L DHB, 2013 WL 1431725, at *9 (noting that policy reasons for "public access to materials gathered during discovery only begin to apply once those materials are filed with the court.").

[3] *See* Transcript of Hearing Before the Honorable Edward J. Davila, Dkt. No. 52, 15:24–16:02 ("The Court: What if you received information that had redacted proprietary information, pricing and those types of things? Mr. Balloun: My client is not interested in having information that isn't allowed under the statute. He would love to see all the terms that govern his plan.").

why an entire Schedule of Benefits was marked confidential. Netflix made no concessions or revisions after the meet and confer. The following list of improper designations is nonexhaustive.

2. **Benefits:** Netflix designated as confidential fifteen full pages comprising the entire schedule of benefits to which Plaintiff is entitled to under the vision plan. Challenge at 8:23-9:23. Swept into Netflix's mass designation include such statements as "This Schedule lists the vision care services and vision care materials to which Covered Persons of VISION SERVICE PLAN ("VSP") are entitled," "There shall be a Copayment of $10.00," or that "Eye Examination" services are either "Covered in Full" or "Up to $45.00" depending on the provider. Most of the designated information about the plan was already disclosed to the public, and is ineligible for protection under the Protective Order. *See* Order at ¶ 3; Dkt. No. 18-3, Ex. 4D; Dkt No. 19-5. Netflix has not articulated why any specific portion would be eligible for protection.

3. **Allocation of Plan Responsibilities:** Netflix has designated as confidential the most basic terms regarding the allocation of responsibilities for the operation and administration of the plan. *See* Challenge at 4:28–5:9, 5:19–25, 6:12–19, 7:10–21, 8:5–17. Netflix has designated such innocuous statements as "Plan Sponsor has selected Anthem Blue Cross of California ('Medical Network') to provide medical Network Services to the Plan," "Such services may include: … adjudicating medical claims in collaboration with Medical Network," "Medical Network is solely responsible for certain services, including but not limited to, provider contracting, timely processing and invoicing of medical claims, utilization management (including where applicable, medical necessity review and prior authorization review), and provider appeals," "The PBM is solely responsible for certain pharmacy administration services, including but not limited to: … • Prior authorization review • Adjudicating pharmacy claims • Claims appeals," "Collective Health and Plan Sponsor further agree that Collective Health does not: … have any discretionary authority or control over the Plan's prescription drug benefit program, including but not limited to the Formulary, plan design of the Plan's pharmacy benefits and the adjudication of such benefits." Netflix_00480, -487, -488, -505. All of this information either is summarized in public documents, conflicts with statements made therein, or else is required to be disclosed to plan beneficiaries as a required component of every plan. *See* ERISA §§ 104(b)(4), 402(b)(2). If

any portion of this material is eligible for protection, Netflix has not provided an explanation.

4. **Descriptions of Plan Responsibilities:** Netflix has so thoroughly redacted the pricing information in its agreement with Anthem that the agreement has been rendered ambiguous as to the scope of Anthem's responsibilities under the plan. Challenge at 2:17–4:5. Several portions of the agreement refer to Section 3(B) of Schedule A, which Netflix has redacted in its entirety, in order to specify the scope of services to be provided under the plan. *Id.* at 2:22–3:25. These portions include: "If applicable to the Plan benefits and *as indicated in Section 3(B) of Schedule A*, Anthem shall offer wellness programs and any other programs to help Client effectively manage the cost of care," "If applicable to the Plan benefits and *as indicated in Section 3(B) of Schedule A*, Anthem may provide or arrange for the provision of the following managed care services, utilizing Anthem's medical policies: Conduct medical necessity review, … determine the medical necessity of an admission or procedure and the appropriate level of care, … determine appeals of any adverse benefit determination made by Anthem…" Netflix_00435–436 (emphases added). Plaintiff explained the problem. Netflix would not budge. Not only did Netflix refuse to make any changes to the redactions following the meet and confer, but counsel for Netflix also refused to even display the unredacted contents to counsel for Plaintiff live during the meet and confer videoconference. Contrary to Netflix's misstatements above, Plaintiff is not challenging the confidentiality designation of the pricing terms. Plaintiff only challenges the redaction of the services to be provided—because such redactions prevent Plaintiff from understanding the scope of services to be provided under the plan. (Netflix also continues to conflate Plaintiff's discovery requests with his claims. *See, e.g.*, *supra* note 3 and accompanying text.)

5. Netflix spends the bulk of its time arguing from generalities instead of defending its overbroad designations with specificity. Netflix also misstates that these documents are "unrelated to any issues in this case," when the Court had ruled the polar opposite in dispensing with and denying Netflix's motion for summary judgment. Dkt. No. 44 at 16 ("Without having the agreements available . . . the Court cannot determine whether they bear on Zavislak's rights and responsibilities under the Plan and thus ought to be produced under § 1024(b)(4)."). Netflix's request to retain confidentiality as against Plaintiff's Challenge should be denied.

                    Respectfully submitted,

DATED: December 30, 2021

/s/ *O. Shane Balloun*
O. Shane Balloun
**BALLOUN LAW**
**PROFESSIONAL CORPORATION**
355 Harris Avenue, Suite 201
Bellingham, WA 98225
Phone: 360.318.7778
Fax: 360.483.5960
o.shane@ballounlaw.com

*Attorney for Plaintiff*
*Mark Zavislak*

BAKER BOTTS LLP

By: /s/ *Christopher Rillo*
    Christopher Rillo (SBN 112009)
    christopher.rillo@bakerbotts.com
    **BAKER BOTTS LLP**
    101 California Street, Suite 3600
    San Francisco, California 94111
    Telephone: (415) 291-6200
    Facsimile: (415) 291-6300

    Catherine A. Scott (SBN 334420)
    catherine.scott@bakerbotts.com
    **BAKER BOTTS LLP**
    1001 Page Mill Road, Bldg. One Suite 200
    Palo Alto, California 94304
    Telephone: (650) 739-7500
    Facsimile: (650) 739-7699

    *Counsel for Defendant*
    *Netflix, Inc.*

# **ATTESTATION**

I hereby attest that I have obtained concurrence of the above noted signatories as indicated by a "conformed" signature (/s/) within this e-filed document.

DATED: December 30, 2021

By: /s/ *Christopher Rillo*
Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
**BAKER BOTTS LLP**
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Catherine A. Scott (SBN 334420)
catherine.scott@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant
Netflix, Inc.*

.