UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

---

Mark Zavislak, )
)
Plaintiff, )
)
v. ) No. 5:21-CV-01811-EJD
)
Netflix, Inc., )
)
Defendant. )

---

Videotaped Deposition Upon Oral Examination

of

SHAREN STANEK-LOWE

30(b)(6) Delta Dental of California

---

Taken Remotely via Zoom

DATE: Friday, February 25, 2022

REPORTED BY: Jamie Booker, RPR, CCR 3281

A P P E A R A N C E S

For the Plaintiff:
O. SHANE BALLOUN
BALLOUN LAW PROFESSIONAL CORPORATION
355 Harris Ave Ste 201
Bellingham, WA 98225-7068
o.shane@ballounlaw.com

For the Defendant Delta Dental of California:
CANDICE P. SHIH
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
CShih@hansonbridgett.com

For the Defendant Netflix, Incorporated:
CHRISTOPHER J. RILLO
RANI REDDY
BAKER BOTTS
101 California Street, Suite 3200
San Francisco, California 94111-5802
christopher.rillo@bakerbotts.com

Also Present: DAN BASSETT, VIDEOGRAPHER
MARK ZAVISLAK



I N D E X


| EXAMINATION BY: | | PAGE |
|---|---|---|
| O. SHANE BALLOUN | | 5 |
| CHRISTOPHER RILLO | | 80 |

* * *

| EXHIBIT | DESCRIPTION | FOR I.D. |
|---|---|---|
| Exhibit 44 | Netflix_00156 (Delta Dental Employee Benefit Booklet) | 27 |
| Exhibit 45 | Netflix_00375 (Delta Dental Employee Benefit Booklet) | 36 |
| Exhibit 60 | 2022-02-22 Revised SAT Delta Dental of California (Zavislak v. Netflix) | 7 |
| Exhibit 61 | DDC000001-38 | 14 |
| Exhibit 62 | [redacted] | 57 |




REMOTELY VIA ZOOM; FRIDAY, FEBRUARY 25, 2022
2:30 P.M.
--o0o--

VIDEOGRAPHER: We are on record. Time now is 2:32 p.m. Today's date is February 25, 2022.
This is Volume I of the remotely recorded 30(b)(6) video deposition of Delta Dental of California by and through Sharen Stanek-Lowe filed in the matter of Mark Zavislak v. Netflix incorporated filed in the United States District Court Northern District of California. Case number is 5:21-cv-01811-EJD.
My name is Dan Bassett. I am the videographer. The court reporter is Jamie Booker. We are both with B&A Litigation Services.
Counsel, please identify yourselves for the record, and then the witness may be sworn in.
O. SHANE BALLOUN: Thank you.
This is O. Shane Balloun, B-a-l-l-o-u-n, for Plaintiff Mark Zavislak.
CANDICE SHIH: And this is Candice Shih, C-a-n-d-i-c-e S-h-i-h, counsel for Delta Dental of California.
CHRISTOPHER RILLO: This is Christopher Rillo, counsel for Netflix, Incorporated.
RANI REDDY: And Rani Reddy, counsel for Netflix incorporated.



SHAREN STANEK-LOWE, deponent herein, being first duly sworn on oath, was examined and testified as follows:

E X A M I N A T I O N
BY O. SHANE BALLOUN:
Q. Good morning, Ms. Stanek-Lowe. Thank you for attending today's deposition.
I am mindful that we have commanded Delta Dental to be here under subpoena; and, therefore, you are here but only because Delta Dental has designated you as its appropriate corporate representative to answer questions on its behalf. So thank you for agreeing to be here and for your time and attention.
Have you ever been deposed before?
**A. Yes.**
Q. Approximately how many times?
**A. Once.**
Q. So you may be familiar, but I'll state a few ground rules.
In general, I will ask questions, and you are required to answer in general.

Do you understand?
**A. I do.**
Q. The only exception would be for privilege, and that is the only basis on which Delta Dental's counsel may instruct you not to answer.
CANDICE SHIH: I want to interject here and state that we have met and conferred over the subject matters of this subpoena so, if we start to stray from that, then I may also instruct the witness not to answer.
O. SHANE BALLOUN: Thank you, Ms. Shih.
BY O. SHANE BALLOUN:
Q. Now, do you work for Delta Dental of California?
**A. Yes, I do.**
Q. And what is your formal title?
**A. Account manager of national and special accounts.**
Q. And what are your primary duties?
**A. Renewal processing, reporting, and the overall account management.**
Q. When you say "renewal processing," what do you mean?
**A. Basically the contract renewal.**
Q. Contract between?
**A. Netflix and Delta Dental.**
Q. And where are you located?



**A. Physically in Walnut Creek, and I work out of our Oakland office in California.**
Q. And who is your direct manager at Delta Dental?
**A. Michele Bodie.**
Q. And who is Michele Bodie's direct manager?
**A. Valerie Lane.**
Q. And you can tell me who your reporting chain is all the way up to the CEO?
**A. That would then be Mohammed, and then it would be our CEO.**
Q. Who is?
**A. Off the top of my head, I don't know.**
Q. Did you receive --
**A. I should know.**
Q. Did you receive a copy of the notice of deposition I issued to commence this deposition today directed to Delta Dental?
**A. Yes, I did.**
Q. All right. I'm going to upload into the chat a -- an exhibit which I'm marking as Exhibit 60.
(Deposition Exhibit 60 was marked for identification.)
BY O. SHANE BALLOUN:
Q. It is a revision of the original subpoena with today's date and time. And, if you could confirm when you see it, I would appreciate it.



**A. So I can confirm that I see it; but, when I click on it, it's not --**
Q. Does it allow you to download?
**A. Let's see.**
**No. It says I don't have permission to save in this location. Let's see if we can -- save to desktop maybe? Okay. Okay. I can see it.**
Q. Wonderful. Thank you.
**A. You're welcome.**
Q. So do you understand that Delta Dental has designated you to be prepared to -- and I quote from Federal Rule of Civil Procedure 30(b)(6) -- quote, "testify about information known or reasonably available to the organization," unquote?
**A. Yes.**
Q. Do you understand that the subpoena lists information in seven broad categories formally known as matters for examination that your testimony on Delta Dental's behalf is supposed to cover?
**A. Yes.**
Q. Are you aware that no protective order has been entered with respect to any of these topics and that I may ask freely for information reasonably within the ambit of these topics?



CANDICE SHIH: I just want to interject here to say that there is a protective order in this case. And, if we are going to touch on those subjects, then I would insist that those portions of the deposition be protected by that protective order.
**THE WITNESS: I -- I apologize, Ms. Shih.**
BY O. SHANE BALLOUN:
Q. Ms. Shih is correct. I -- I'm using a -- I -- I used a term that is ambiguated.
What I mean is -- so what she means is that there's a protective order relating to confidentiality and that, to the extent we touch on confidential information, this -- this -- the transcript and the video and this deposition in general will be subject to that protective order.
When I said protective order in my original question, what I meant is that there's no protective order preventing me from asking about any of these topics.
Do you understand that?
**A. I do.**
Q. Thank you.
In your capacity today as Delta Dental's representative, do you understand that the topics in this notice that you were reviewing -- or the subpoena that you're reviewing --

**A. Okay. Yes. Sorry. I thought you were going to continue.**
Q. Yeah. I -- I -- I was, and then I stopped.
And so you understand that these seven topics are the topics for today's deposition.
**A. Yes.**
Q. All right.
It is very common for a corporate representative under deposition to have consulted with others in preparation for testimony.
Did you obtain from other persons or any information from other persons to prepare for today's deposition?
**A. Yes.**
CANDICE SHIH: Object to the extent that this calls for anything privileged.
BY O. SHANE BALLOUN:
Q. Well, did you receive information from anybody, Ms. Stanek-Lowe?
**A. Just the subpoena.**
Q. And did you prepare for today's deposition with anybody?
CANDICE SHIH: You can answer.
**THE WITNESS: So yes.**



BY O. SHANE BALLOUN:
Q. And who was that?
**A. Ms. Shih.**
Q. Was there anyone else that you prepared with?
**A. Also with our internal Delta Dental counsel, Galen -- Galen.**
Q. And besides those two lawyers, were there any other people that you prepared with for today?
**A. No.**
Q. Were there any other people that you spoke to in order to gain more information about today's deposition?
**A. No.**
Q. Do you feel fully prepared to discuss these topics for which you have been designated to be deposed?
**A. Yes.**
Q. If you believe that you have incomplete information or knowledge about a particular topic or question, are you willing to inform me?
**A. Yes.**
Q. And, if you do not inform me, I will assume that you've given me the most complete and accurate information to the best of the knowledge of anyone at Delta.
Do you understand?
**A. Yes, I do.**
Q. I will do my best to keep my questions on topic.



However, Ms. Shih or potentially Mr. Rillo may object to one or more questions that I ask you as outside the scope of the deposition notice I had issued to Delta -- Delta.
Do you understand?
**A. Yes.**
Q. And so this essentially means that Delta's attorney is stating for the record that the question is one that she believes Delta shouldn't have to answer, and she may or may not be correct. And, if we have a disagreement about it, later the judge may make a ruling.
Does that make sense?
**A. Yes.**
Q. All right.
Are you aware that we issued a previous subpoena in this case for documentary production served upon Delta Dental in early December 2021?
**A. Yes.**
Q. Did you take part in the decision making regarding whether documents would be provided under that documentary subpoena?
**A. Are you asking if I assisted with providing documents?**
Q. Did you assist in providing documents?
**A. Yes.**
Q. And which documents did you provide?



**A. The Employee Benefits Handbook. The Employee Benefits Highlight Sheet. I think those were the only two original documents.**
Q. Other than Mr. Sorrells or Ms. Shih, have you interacted with other attorneys regarding this matter?
**A. No.**
Q. Have you interacted with other attorneys on behalf of Delta Dental?
**A. No.**
Q. All right.
Let's talk about Netflix's benefits plan. I will represent to you that Netflix has a benefits plan called the Netflix Incorporated Health and Welfare Benefits Plan. For the rest of the deposition, I may call that the Netflix Plan.
Do you understand?
**A. Yes.**
Q. Are you familiar with the Netflix Plan?
CANDICE SHIH: Objection to the form of the question. What -- what does "familiar" mean?
BY O. SHANE BALLOUN:
Q. Ms. Stanek-Lowe, if you understand, you can try to answer.
**A. So there's -- when -- when you state the health and welfare plan, that's typically a separate document**

**that is a Netflix document.**
**What I'm familiar with is the Delta Dental published Employee Benefit Booklet and the Benefit Highlight Sheet.**
Q. Are Delta Dental's dental benefits provided to California-based Netflix beneficiaries and participants under the Netflix Plan?
**A. Yes.**
Q. Who provides those benefits?
**A. Delta Dental of California.**
Q. And who administers those benefits?
**A. Delta Dental of California.**
Q. Under what contract does Delta Dental of California administer those benefits for the Netflix Plan?
**A. So there's a specific contract. I think it's called the dental administrative contract agreement.**
Q. Are you familiar with that agreement?
**A. Yes.**
(Deposition Exhibit 61 was marked for identification.)
BY O. SHANE BALLOUN:
Q. All right. To that end, I'm going to upload another exhibit which I've marked as 61.
O. SHANE BALLOUN: I should have asked. Ms. Shih, are you getting these in the chat for Zoom?



CANDICE SHIH: I am. And I will certainly tell you if I'm not.
O. SHANE BALLOUN: Excellent. Great. I want to make sure you have them before I start querying your client or your client's representative.
Same of course goes to Netflix, but we've already done this before together.
CANDICE SHIH: I have Exhibit 61. Of course the witness will have to have it too.
**THE WITNESS: Okay. Yes.**
BY O. SHANE BALLOUN:
Q. Wonderful.
So I'm showing you a copy of Exhibit 61. Have you ever seen this exhibit before?
**A. Yes.**
Q. Is this the contract that you were just referring to in answer to my previous question?
**A. Yes.**
Q. It's called the Delta administrative services contract. That's correct?
**A. That is correct.**
Q. When did this Delta administrative services contract come into force with Netflix?
**A. I believe January 1st of 2018.**
Q. If we go to page 7, which is Bates stamped as



DDC then five zeros and the number 7, you see the signature block?
**A. I do.**
Q. Do you see the dates for the signatures?
**A. I do.**
Q. And what are those dates?
**A. So, for our legal counsel, April 22nd of 2020. And for Netflix, it's May 18th of 2020.**
Q. Did you have an agreement with Netflix prior to this date? You said 2018?
**A. Yeah. I -- I am not sure.**
Q. Okay.
CANDICE SHIH: I will also object to the extent that the subpoena calls for information from 2020 forward.
O. SHANE BALLOUN: Of course. I'm just following up on what the witness stated.
CANDICE SHIH: It's actually 2021 forward.
BY O. SHANE BALLOUN:
Q. So would this document have been in force as of January 1, 2020?
**A. I believe so. It should state that.**
Q. So if we go to the first page -- sorry. Not the first page -- the -- the second page after page 7, which is page 9 -- so arithmetic goes -- we see an employee benefit booklet attached as Appendix B; correct?



**A. I see that, yes.**
Q. All right. And what's the effective date on the benefit booklet?
**A. January 1, 2020.**
Q. So then does that mean, despite the dates on the Administrative Services Contract, that Delta Dental was providing benefits to Netflix under this contract as of January 1, 2020?
**A. I would say yes.**
Q. Is it common for Delta Dental to begin providing benefits and then paper the agreement perhaps after the benefit year starts?
**A. Yes.**
Q. And so, to your knowledge, this -- this contract was effective as of January 1, 2020.
**A. To my knowledge, yes.**
Q. All right.
For the rest of the deposition, I may call this -- instead of the Delta Administrative Services Contract, I may call it the Delta contact or the Delta Netflix contract. Is that all right?
**A. That would be great.**
Q. Would you understand what I mean when I say those terms?
**A. Yes.**

Q. Great. All right.
So these terms of the Delta contract were mutually agreed upon by Netflix and Delta Dental; right?
**A. Correct.**
Q. All right. And this contract specifies a procedure for the allocation of responsibilities for the operation/administration of the Delta portion of the Netflix Plan; doesn't it?
**A. Correct.**
Q. And this contract allocates responsibilities -- strike that.
What sorts of services does Delta Dental provide Netflix?
**A. So claim adjudication, grievance and appeals. Those are the primary functions.**
Q. Claim adjudication and -- and you said grievance and appeals?
**A. Uh-huh.**
Q. What about provider network access?
**A. Oh, definitely. Sorry.**
Q. No. And that's -- that's not me, you know, with a gotcha there. I'm just asking.
What about claims processing?
**A. Yes.**
Q. Okay. If you go to page 1 in the third



paragraph above Section 1, which is what lawyers typically call the recital section, it begins, "Whereas sponsor has requested Delta Dental."
Do you see that?
**A. No. Are we still in the Employee Benefit Booklet or --**
Q. No. No. We're --
**A. -- we --**
Q. We're in the Delta contract on page 1 of the exhibit.
**A. Okay. All right. Yes.**
Q. So third --
**A. I'm on page 1.**
Q. Thank you. Third paragraph, "Whereas sponsor has requested Delta Dental."
Do you see that?
**A. Yes, I do.**
Q. And then it continues, "To provide certain administrative services to the plan. And Delta Dental has agreed to provide such services in accordance with this contract"?
**A. Yes.**
Q. And so the services, we just talked about claims processing, claims administration, network provision, grievance and appeals. And I think you said something



else. They -- these are all -- these are all the services or some of the services, at least, that this contract covers; right?
**A. Correct.**
Q. Okay. So, for simplicity sake, the Delta Netflix contract governs Delta Dental's provision of Delta benefits and services under the Netflix plan; right?
**A. Yes.**
Q. So, furthermore --
CANDICE SHIH: Objection to the extent that that calls for legal conclusion.
BY O. SHANE BALLOUN:
Q. Furthermore, isn't it, in fact, true that Delta Dental has agreed to serve as the administrator of the dental portion of the Netflix Plan?
CANDICE SHIH: Again, object to the extent this calls for legal conclusion.
BY O. SHANE BALLOUN:
Q. Whenever your -- when Delta Dental's attorney objects, unless she instructs you specifically not to answer, you can still or you should still answer the question.
**A. Okay. Thank you.**
Q. And you may have been thinking about the answer. I didn't mean to interrupt you.



**A. No. And can you repeat then the question?**
Q. Sure.
So isn't it, in fact, true that Delta Dental has agreed to serve as the administrator for the dental portion of the Netflix Plan?
**A. Yes.**
Q. However, isn't it, in fact, also true that the areas of administration which Collective Health will be acting as Netflix's authorized representative with respect to planet -- the plan and the -- and enrollees -- pardon me -- sorry. Let me rephrase that. That's not even a complete sentence.
Isn't it also true that there are areas of administration in which Collective Health will be acting as Netflix's authorized representative with respect to the plan and enrollees?
**A. Yes.**
Q. All right. So let's look at Section 1.01 under "Definitions."
Do you see the term "contract"?
**A. Yes.**
Q. What does the last sentence of the definition say?
**A. "This contract constitutes the entire agreement between the parties."**

Page 22

Q. And, of course, previous to that, the contract includes attached appendices, endorsements, and riders; correct?
**A. Correct.**
Q. And that would include the Employee Benefit Booklet as well.
**A. Correct.**
Q. I will represent to you that my client in this case against Netflix, Mark Zavislak, is a beneficiary under the Netflix Plan and that he has Delta Dental benefits.
The contract specifies the obligations of Delta Dental to cover persons like Mr. Zavislak; doesn't it?
**A. As long as he is -- yes -- as you stated, a beneficiary of an enrollee.**
Q. Sure. So a -- presuming for the remainder of the deposition that what I've said is true and that he is the beneficiary of an enrollee in the Delta Dental portion of the plan, this contract would specify the obligations that Delta Dental has to him; correct?
**A. Correct.**
Q. Thank you.
**A. Uh-huh.**
Q. And so this contract also specifies operational and administrative obligations that Delta Dental has;

Page 23

right?
**A. Yes.**
Q. And this contract specifies operational and administrative obligations that Netflix and Collective Health together may have with respect to the dental plan; correct?
**A. Correct.**
Q. And this contract specifies obligations that covered persons like Mr. Zavislak have as conditions of coverage; doesn't it?
**A. Yes.**
Q. And does this contract provide an amendment procedure?
**A. Yes.**
Q. And may this contract be amended except in writing?
**A. Meaning only in writing?**
Q. Yes.
**A. Correct.**
Q. It can only be amended in writing.
**A. Correct.**
Q. Does this contract specify the basis on which payments are made to and from the plan?
**A. Yes.**
Q. And isn't it true that this contract specifies

Page 24

the criteria under which Delta Dental will pay plan benefits to covered persons like Mr. Zavislak?
**A. Yes.**
Q. And isn't it true that this contact specifies the timing and amounts of fund transfers regarding payments of claims from the Netflix Plan?
**A. That I'm unsure of in that it actually specifies the timing of receipt of those payments.**
Q. Okay. Let's go to Section 3.04 on page 4.
If, after you read the section under 3.04, you could comment on my previous question.
**A. Okay. Then, yes, we do.**
Q. The contract does provide timing elements with respect to funds transfers.
**A. Yes, it does.**
Q. Isn't it, in fact, true that the terms of the employee dental benefit plan are set forth in this contract?
**A. Can you repeat that question again?**
Q. Sure. Actually, let me go back to page 1 --
**A. Okay.**
Q. -- in the second paragraph.
Why don't you just read the second paragraph starting with "whereas sponsor has adopted."
**A. Second -- so, "Whereas sponsor has adopted an employee dental benefit plan, the plan"?**

Page 25

Q. Uh-huh. That's right.
**A. Okay. "Which is set forth in the Employee Benefit Booklet as shown in Section 7 mutually agreed upon by sponsor and Delta Dental and for which sponsor retains all liability."**
Q. So isn't it, in fact, true that this contract, by incorporation of the -- the Employee Benefit Booklet sets forth terms of the employee dental benefit plan?
**A. Yes.**
Q. Let's look at page 6 in Section 6.03.
**A. Okay.**
Q. It reads -- and please confirm that I'm reading here correctly -- "In the event of termination by Delta Dental, all benefits shall terminate, and Delta Dental shall be released from all further obligations of the contract except for processing and payment of claims during 12-month runout effective on the last day of the month in which written notice of termination is given."
Is that, in fact, how Delta Dental operates its plan with Netflix?
**A. Yes.**
Q. So, if this contract were to have -- were to be terminated by Netflix, for example, this -- this term would control, and all benefits would terminate subject to

the 12-month runout.
**A. Correct.**
CHRISTOPHER RILLO: I have to object to that last question belatedly. I'm sorry. It misstates the contract term.
BY O. SHANE BALLOUN:
Q. Is that also true if Delta Dental were to terminate the contract?
Oh, let me rephrase.
CANDICE SHIH: Objection. What is also true?
O. SHANE BALLOUN: No. No. Actually, both Mr. Rillo and Ms. Shih are correct. I misstated.
BY O. SHANE BALLOUN:
Q. In the event of termination by Delta Dental -- not by Netflix, but by Delta Dental -- all benefits would terminate subject to the 12-month runout.
Is that not correct?
**A. Correct.**
O. SHANE BALLOUN: All right. Counselors, do I have it -- do I have it correct and disambiguated now?
CHRISTOPHER RILLO: Yes. Thank you. That was my objection --
O. SHANE BALLOUN: Thank you, Mr. Rillo. I appreciate that. Yeah. I do appreciate that.



BY O. SHANE BALLOUN:
Q. All right. Let's go down -- actually, let's -- let's close Exhibit 61 for now. I'm going to upload a -- an exhibit which is marked from previous depositions as Exhibit 44.
(Deposition Exhibit 44 was marked for identification.)
O. SHANE BALLOUN: Ms. Shih, and, Ms. Stanek-Lowe, please let me know when you have those in hand.
**THE WITNESS: Have it.**
CANDICE SHIH: And I have it as well.
O. SHANE BALLOUN: Thank you.
BY O. SHANE BALLOUN:
Q. All right. What is this document?
**A. The Employee Benefit Booklet.**
Q. What's its effective date?
**A. Gee, I think -- January 1, 2020.**
Q. I will represent to you that this document was provided to my client upon request in February -- around February 24th of 2021, and that Netflix had represented that it was the latest version of the employee handbook -- Employee Benefit Booklet available at that time.
Does that sound like normal practice?
**A. Yes.**



Q. Does Delta Dental always produce new benefit booklets before the term begins?
**A. Not always, no.**
Q. Do they -- does Delta Dental aim to provide benefit booklets before the term begins?
**A. It depends.**
Q. What does it depend on?
**A. The negotiations of the plan design -- so receipt of that information from the client, the loading of that information into our software, our contracts department. So then it flows to our contracts department so the production of this document. So it's -- it's based on timing.**
Q. It's based on timing and negotiations and --
**A. Correct.**
Q. Okay. If there is a delay in the production of the Employee Benefit Booklet, is it, in fact, still true that Delta Dental is providing services prior to the production of that booklet?
**A. Yes.**
Q. Okay. Pursuant to the contract or the negotiations for the contract that we discussed earlier.
**A. Correct.**
Q. So before the document is available or finalized, what does Delta Dental use to determine



benefits under a dental plan?
**A. The information is programmed into our system prior to a plan year for contract start date. So, in this case January 1st of 2020 or January 1st of 2021, depending on, again, the contract.**
Q. And -- thank you.
And so how did you obtain that information to know what benefits to enter into the system?
**A. From Netflix.**
Q. From Netflix.
Did -- did Delta Dental have conversations with Netflix about what benefits to provide as of -- as of the beginning of the year?
**A. Correct.**
Q. Sure. Were those conversations, say, on video conferences or -- or how were they conducted?
**A. Typically, they're via email.**
Q. Via email.
And then so someone from the benefits team suggested to Delta -- sorry. Someone from the Netflix benefits team suggested to Delta Dental what -- what benefits they'd like to have as a part of the -- the dental plan?
**A. Correct. It's -- it's part of my role as well as their role, where I'm consulting them on what the**

Page 30

**industry standards are. They're making informed decisions based on financials and what those plan designs will be. And then we come to an agreement. They indicate that agreement in writing, and then I move forward and execute that.**

Q. I see. And, before that agreement is in writing, though, do you begin executing on the provision of benefits --

**A. No.**

Q. No.

**A. No.**

Q. Okay. And those decisions are typically made prior to the beginning of the plan year; isn't that right?

**A. Correct.**

Q. In this case, with the signing of the -- the Delta/Netflix contact in April and May of 2020, when were those decisions made about provision of benefits?

**A. They most likely occurred in 2019.**

Q. I see. Were any changes made for the 2021 plan year?

**A. I believe so. I believe there's an amendment.**

CANDICE SHIH: Objection. Change as to what?

O. SHANE BALLOUN: Changes to the benefits provided to beneficiaries and participants under the Netflix plan for the dental portion.

Page 31

**THE WITNESS: So, again, I would have to consult my notes, but I think there is an amendment for 2021.**

BY O. SHANE BALLOUN:

Q. When you -- when you think on that possible amendment, what do you recall as being that amendment?

**A. I think it had our monthly allowance as a change; but, other than that, I'd have to consult that specific document.**

Q. So at least a change to the monthly allowance, possibly nothing else, or possibly other changes.

**A. Correct.**

Q. Okay. And where was this amendment documented?

**A. In our system.**

Q. What do you mean --

**A. And then --**

Q. Oh, sorry.

What do you mean by "system"?

**A. Well, of course our computer system.**

Q. Okay. And then you -- you were about to answer further and say "and then," and I cut you off. I apologize.

**A. Well, and then that's also provided to Netflix, our client.**

Q. And how do you provide that to Netflix?

**A. Electronically.**

Page 32

Q. I see.

Do they have log-ins to your system?

**A. No.**

Q. No. Is it an output sent by email?

**A. Correct.**

Q. I see.

How difficult is it for someone at Netflix to get ahold of that document?

CANDICE SHIH: Objection as for speculation.

BY O. SHANE BALLOUN:

Q. All right. Let's talk about the Employee Benefit Booklet then on -- which is Exhibit 44. So let's go to page 2, which is Netflix Bates No. 158.

Do you see under the title "Introduction"?

**A. I do.**

Q. And do you see the second paragraph under the title of "Introduction"?

**A. I do.**

Q. Would you do me the favor of reading this short paragraph?

**A. Sure. "This Employee Benefit Booklet is a summary of your group dental program. Please read it carefully. It only summarizes the detailed provisions of the group dental contract issued by Delta Dental of California," in parenthesis, in quotes, "Delta Dental, and**

Page 33

**cannot modify the contract in any way."**

Q. So the Employee Benefit Booklet refers to another so-called group dental contract. And the language here indicates the contract is issued by Delta Dental of California; right?

**A. Correct.**

Q. So let's look at -- under the heading "Using this Employee Benefit Booklet."

**A. Okay.**

Q. See where it says the second -- or see under the second paragraph -- well, sorry. My apologies.

See the second paragraph under that title beginning, "The benefit explanations contained." Do you see that?

**A. I do.**

Q. All right. I'll read it.

"The benefits explanations contained in this booklet are subject to all provisions of the contract on file with your employer, trust fund, or other entity/contract holder and do not modify the terms and conditions of the contract in any way."

In both of these sections, the contract that is being referred to is the dental administrative services agreement; correct?

**A. Correct.**

Q. Okay. And so, from the language here, we understand that the explanations in this booklet do not modify the terms of the Delta/Netflix contract; correct?
**A. Correct.**
Q. And so even in the -- and even in the -- the -- the second paragraph under, "Using this Employee Benefit Booklet," it states, "nor shall you" -- I assume the reader -- "accrue any rights because of any statement in or omission from this booklet." Isn't that correct?
**A. Correct.**
Q. Right. And is that your understanding how the -- the dental plan works?
**A. Yes.**
Q. Okay. Let's go to page -- actually, no. No. Let me just reconfirm then.
If there was a variance between -- if there was a variance between this Employee Benefit Booklet and the Delta/Netflix contract, the Delta/Netflix contract would control; wouldn't it?
**A. Correct.**
CANDICE SHIH: Objection. Calls for a legal conclusion.
BY O. SHANE BALLOUN:
Q. Let's go to page 3. We see we're in the "Definition" section; right?



**A. Correct.**
Q. All right. Would you please read the definition for the capitalized word "Contract"?
**A. "Contract: The agreement between Delta Dental and the contract holder, including any attachments."**
Q. And so that means the Delta/Netflix contract including its riders and attachments and the Employee Benefit Booklet, et cetera.
**A. Yes.**
Q. Under the term "Contract" -- I won't ask you to read the definition, but do you see the next defined term?
**A. The contract benefit level?**
Q. Yes. And do you see the -- the next defined term under that?
**A. Contract holder.**
Q. And do you see the next defined term under that?
**A. Contract year.**
Q. Thank you.
And then, on page 4, we see there's another defined term between "Enrollees" -- no. No. Let me -- sorry. We don't see. I was going to say -- I was going to have you confirm that there is no -- there is no definition between "enrollees' effective date of coverage" and the defined term "Maximum;" right? It goes "Enrollee pays;" correct? On page 4?



**A. Correct.**
Q. And then "Enrollees' effective date of coverage."
**A. Yes.**
Q. And then "Maximum."
**A. Yes.**
Q. And there's no definition in between "Enrollees' effective date of coverage" and "Maximum."
**A. Correct.**
Q. Right. All right.
Now, on page 4, there's another defined term, "An open enrollment period."
Do you see that?
**A. Yes.**
Q. And do you see the next term, "Pretreatment estimate"?
**A. Yes.**
Q. Is there a definition in between those?
**A. No.**
Q. And then do you see the term "Maximum contract allowance"?
**A. Yes.**
Q. Okay. You can keep that open. I'm going to give you another document, which is Exhibit 45.
(Deposition Exhibit 45 was marked for



identification.)
O. SHANE BALLOUN: Tell me, Ms. Shih, and, Ms. Stanek-Lowe, when you've received it.
**THE WITNESS: Received it and opening.**
CANDICE SHIH: I have it.
BY O. SHANE BALLOUN:
Q. Okay.
**A. Okay.**
Q. Great. So I've marked this as Exhibit 45.
Have you ever seen this document before?
**A. Yes.**
Q. And what is it?
**A. The Employee Benefit Handbook with an effective date of January 1, 2021.**
Q. I should have asked you before about Exhibit 44, the one for 2020.
Who -- who authored the document?
**A. Delta Dental.**
Q. And who authored Exhibit 45?
**A. Delta Dental.**
Q. Okay. Does Delta Dental always author Employee Benefit Booklets?
**A. It depends.**
Q. Oh, sometimes do the -- do the sponsors or administrators to the plan --

**A. I mean --**
Q. Do your clients sometimes author them?
**A. So we provide a booklet. I guess it depends on if it's an evidence of coverage booklet for a fully insured client; or, in this case, Netflix is self-funded so we issue an Employee Benefit Booklet.**
Q. Okay. Excellent.
Help me -- if you could help me understand the difference between -- between these scenarios.
So Netflix is self-funded; right?
**A. Correct.**
Q. They pay Delta Dental -- and I'm not asking about pricing today. It's not within the purview. It's confidential, and it's not relevant.
But they pay a certain amount to Delta Dental in order to fund the plan; right?
**A. They pay an administrative fee, and then they pay for their claims.**
Q. They pay for the claims. So they pay them in arrears or -- or prior to the claims?
**A. And, again, that goes back to the contract that we referenced --**
Q. Okay.
**A. -- which was the payment details.**
Q. Okay. So whatever the answer is, is in the



contract.
**A. Correct.**
Q. All right. And that may differ from client to client.
**A. Definitely.**
Q. Oh, I see.
Okay. Let's -- let's keep looking at the Employee Benefit Booklet.
**A. Okay.**
Q. It looks like Delta Dental issued a new benefit booklet for 2021; right?
**A. Correct.**
Q. Is that normal to issue a new one year over year?
**A. No.**
Q. Oh.
**A. It depends -- again, I think we talked about this earlier. If there's a plan design change, then we issue. That effects the contract and our obligation of how we're going to administer the contract. So then an amendment would happen.**
**And then, typically, if there is a plan design change, then we would reissue a new Employee Benefit Booklet.**
Q. Reissue if there's a plan design change.



What do you mean by plan design change?
**A. So like a calendar-year maximum.**
Q. Okay.
**A. If that amount changes from, say, a $1,000 to 1,500.**
Q. So when you say calendar-year maximum, you mean a calendar-year maximum for payout to participants or beneficiaries under the plan.
**A. It's the plan design. Correct.**
Q. Right. So if -- if someone were a beneficiary and in one year had $1,100 worth of dental work that would be covered but the maximum payout was 1,000, Delta wouldn't pay for 1,000, and that -- that beneficiary would be left to pay the remaining 100; right?
**A. Correct.**
Q. And then, in the next year, if Delta Dental -- sorry. If the client had increased the maximum to 1,500, same scenario, that beneficiary had $1,100 in dental claims, then the whole -- the whole claim -- the -- all of the claims would be paid because it was under that max -- that new maximum.
**A. Correct.**
Q. All right.
**A. As long as deductibles, coinsurances, all of the other pieces and factors that go into the claim.**



Q. Assuming all the other --
**A. Adjudications. Right.**
Q. Yeah. Assuming all the other --
**A. Just as a -- right.**
Q. Right. Because we --
**A. High-level example.**
COURT REPORTER: I'm sorry. This is -- I need to interrupt. When two people are speaking at once, the record not accurate. So that exchange where you guys were both just speaking is not on record.
BY O. SHANE BALLOUN:
Q. Okay. So let's -- let's -- thank you, madam court reporter. Let's try to put it back on record.
You were saying that is a high-level example, Ms. Stanek-Lowe, and that the -- the scenarios I just gave are subject to whether copays were met, coinsurances were met, and other conditions of coverage were met; correct?
**A. Correct.**
Q. Okay.
O. SHANE BALLOUN: And, Madam Court Reporter, thank you for the -- the reminder.
BY O. SHANE BALLOUN:
Q. Okay. Was there a plan design change in the Netflix plan for 2021?
**A. I'd have to look again at that amendment to**

**verify what specifically, if there was a change. But I believe there was a change in -- from 2020 to 2021.**
Q. Do you have that readily available?
CANDICE SHIH: Objection. You didn't ask for any document production in connection with this deposition.
O. SHANE BALLOUN: I did not. I'm not asking for her to produce it to me. I'm just asking maybe if it would help her refresh her recollection.
CANDICE SHIH: Okay. I don't think she's obligated to pull up notes while you're asking her questions.
O. SHANE BALLOUN: No. I'm just asking if she might have access to it.
BY O. SHANE BALLOUN:
Q. All right. So -- so you're not quite sure -- you're not quite sure what the amendment might have been in 2021.
**A. Correct.**
Q. Okay.
**A. All of the stipulations of it, yes. Correct.**
Q. Right. But the answer to that question would be in the amendment itself; correct?
**A. Correct.**
Q. All right.



So you stated that this document was authored by Delta Dental. And so I will represent to you that this document with the Bates stamp numbering starting with 375 at the bottom is otherwise identical except for the Bates stamp to a version produced to me by Netflix's outside counsel on June 17, 2021, as an update -- well, he might disagree. It was a -- he says it was a courtesy -- an -- but, otherwise, an update to Netflix's response to Mr. Zavislak's original request.
Do you happen to know when this document would have been created or when it was created?
**A. So are we talking about the footnote where, on Exhibit 44, there's Netflix and then 00159; and then, when we go to Exhibit 45, it's Netflix 00376?**
Q. I -- thank you. That's a good question. Those are what we call Bates stamps. No. I'm not referring to the Bates stamps.
**A. Okay.**
Q. I'm actually just referring to the entire document Exhibit 45 itself.
**A. Okay.**
Q. The -- the Employee Benefit Booklet with an effective date of January 1, 2021.
Do you know when that Employee Benefit Booklet was created?



**A. Not the exact date.**
Q. Approximately?
**A. Again, I'd have to look at my notes to figure out, like, the negotiations, as we talked about earlier, timing.**
Q. Uh-huh.
**A. So either we were able this year or in that year -- that plan year prior to January 1st of 2021 or if this was immediately following or somewhere in 2021.**
Q. Sure. Okay.
Let's go to page 2, if you wouldn't mind.
**A. Sure.**
Q. And I mean nominal page 2, which is actually the third electronic page, and it's Netflix 377.
And you see the second paragraph, again, under the introduction beginning with, "This Employee Benefit Booklet is." Do you remember reading the first time for Exhibit 44?
**A. Right. "This Employee Benefit Booklet is a summary;" is that --**
Q. That's right. You don't have to read it.
**A. Okay.**
Q. But let's look at the third sentence, which says, "It only summarizes the detailed provisions of the group dental plan administered by Delta Dental of



California and cannot modify the plan in any way."
Do you see that?
**A. Yes.**
Q. Is -- that is different from the language of the Employee Benefit Booklet from 2020; isn't it? Do you remember?
**A. I don't.**
Q. Would you like to compare them?
**A. Sure.**
Q. Let's -- let's do that.
Do you see the differences?
**A. I do.**
Q. That's surprising; isn't it?
**A. No.**
Q. It's not surprising? I was surprised.
**A. Legally, these things change based on legislative changes, based on contract -- our contract department looking at verbiage.**
Q. So that doesn't seem odd to you at all.
**A. No.**
Q. Did you make those changes?
**A. Me personally? No.**
Q. No. Who would have made those changes at Delta?
**A. Our contracts department.**
Q. So it would have been Delta that made those

changes.
**A. Correct.**
Q. Would Netflix have made those changes?
**A. I don't know.**
**And the reason -- I don't want to get into -- when we look at Employee Benefit Booklets, typically, there's a back and forth --**
Q. Uh-huh.
**A. -- where both legal groups -- so Netflix's legal department and then Delta Dental's legal department -- looks at documents. And -- and there may be modifications based on Netflix wanting a change or Delta Dental wanting a change. But both legal -- or the contracts departments need to agree upon that, and then a booklet is issued.**
Q. I see. Do you know whether Netflix requested those changes?
**A. I have no idea.**
Q. Okay. Is that agreement memorialized in writing somewhere?
**A. Is that agreement --**
Q. The agreement to make the changes.
**A. I -- I don't know.**
Q. Thank you. I appreciate it. If you don't know the answer, it's always okay to say "I don't know." So -- all right.



Let's go to page 3 of Exhibit 45.
Do you remember earlier when I was asking you about Exhibit 44 to point -- I was pointing out the definitions for contract, contract benefit level, contact holder, and contract year?
**A. Yes.**
Q. Do you see those are no longer there in the definitions for -- under Exhibit 45?
**A. Yes.**
Q. And do you see on page 4 between the new -- the terms -- remember how I asked you to confirm that there was no definition between the terms "Enrollee effective date of coverage" and "Maximum"? Do you remember that conversation we had just a few minutes ago?
**A. Yes.**
Q. But here there is a definition; isn't there?
**A. Yes.**
Q. And it says -- what is the definition -- what's the term, and then what is its definition?
**A. So health and Welfare Plan, Netflix, Inc., Health and Welfare Benefits Plan.**
Q. Okay. And then do you see the definition for "Plan" under "Open enrollment period"?
**A. Yes.**
Q. And "Plan benefit level"?



**A. Yes.**
Q. And "Plan year"?
**A. Yes.**
Q. And those were not there between "Open enrollment period" and "Pretreatment estimate" last time, were they?
You can refer back to Exhibit 44, if you want to.
**A. And I am.**
Q. Good. That's very good.
**A. You are correct.**
Q. Yeah. It sounds like you have experience and facility with -- with reviewing contracts. Is that right?
**A. That is correct.**
Q. Yeah. So it's always smart to read before confirming; isn't it?
**A. Yes.**
Q. Yes. Yes.
All right. Let's go back to -- you can close Exhibits 44 and 45.
**A. Okay.**
Q. Let's go back to the Exhibit 61; so the -- the Dental Administrative Services Contract.
**A. Okay.**
CANDICE SHIH: Can I just pause here for a moment?



We've got a three-hour depo. I just wanted to check that everybody's good. And maybe, you know, we could take a break in a half hour and that will be the break?
O. SHANE BALLOUN: Sure. That will be fine with me.
CANDICE SHIH: Okay. But, Sharen, is that okay with you?
**THE WITNESS: That would be great.**
CANDICE SHIH: Okay.
BY O. SHANE BALLOUN:
Q. Do you need a break now, Ms. Stanek-Lowe?
**A. No. Thank you.**
Q. I appreciate that. Okay.
Let's look at -- yeah. So let's look at this contract again. There are processing policies associated with Delta Dental's provision of -- of benefits, aren't there?
**A. Yes.**
Q. Right. And those are used by Delta Dental in order to -- to what? Can you explain to me what they are and what they do?
**A. Basically just some guidelines as to how we will process claims, when we will -- if a grievance, an appeal**

**comes in, what the noticing process is.**
**There's typically days that our -- our response is required to a member or to a client. So just some overall processing type of requirements or criteria.**
Q. Uh-huh. Let's go to page -- hmm. Ah, right.
Let's go to page 16, which is page 7 of the attached Employee Benefit Booklet. So Delta Dental of California Bates stamp 16, electronic page 16, but it's page 7 of the -- the attached Employee Benefit Booklet.
Do you see that?
**A. So does it start with Section 7 attachments?**
Q. No. It -- here. I will -- let me share my screen.
**A. Okay.**
Q. Do you see this document here?
**A. Yes.**
Q. Do you see on the bottom it says DDC000016?
**A. Yes.**
Q. You can go there on your own document, if you'd like.
**A. Okay. Okay.**
Q. All right.
Do you see in the first paragraph under the section title "Conditions under which benefits are provided"?



**A. Yes.**
Q. All right. I will read:
"We will pay benefits for the dental services described in Attachment B. We will pay benefits only for covered services. The contract" -- and that means the Delta Administrative Services Contract; right?
**A. Right.**
Q. "The contract covers several categories of dental services when a provider provides them and when they are necessary and within the standards of generally accepted dental practice standards."
What is the next sentence after that? Can you read --
**A. Yeah. Sure.**
**"Claims will be -- claims will be processed in accordance with our standard processing policies."**
**Do you want me to keep going?**
Q. No. No. That's fine. Thank you.
**A. Okay.**
Q. Actually, why don't you keep going. I think that's interesting.
**A. Okay. "The processing policies may be revised at the beginning of a calendar year to comply with annual CDT changes made by the American Dental Association and to reflect changes in generally accepted dental practice**



**standards.**
**"Delta Dental will provide advanced notice of such changes to the contract holder who will then distribute to primary enrollees."**
Q. Okay. So, in general, Delta Dental takes these processing policies which may change from time to time based on new standards from the American Dental Association; is that right?
**A. Correct.**
Q. And then -- and then sends them or gives them notice -- or gives notice, rather, to its -- its clients and, in this case, Netflix; right?
**A. Correct.**
Q. Right. And then the contract states that the contract holder or Netflix will then distribute them to primary enrollees. Isn't that correct?
**A. Correct.**
Q. All right.
Does Delta Dental expect its dentists to make claims that comply with these processing policies?
**A. Yes.**
Q. Do -- let me think about this.
In the Delta Dental provider network, do participating dentists have access to these processing policies?



**A. Are you asking the processing policies between Delta Dental and the client or the processing policies between Delta Dental and the dentist -- the participating dentist?**
Q. Both.
**A. So definitely on the -- the latter -- Delta Dental and our -- our participating dentists there's processing policies --**
Q. Okay.
**A. -- that are in place.**
**I do not know.**
Q. About the latter?
**A. About the -- the first, meaning Delta Dental --**
Q. The former, rather.
**A. -- and the client. Uh-huh.**
Q. Right. About Delta Dental and the client. Okay.
Can you read the next sentence?
**A. "We will"? Is that --**
Q. Yes.
**A. -- the next -- okay.**
Q. Yes, please. Yes.
**A. "We will use the processing policies that are in effect at the time the claim is processed."**
**Keep going?**

Q. Yeah. Sure.
**A. Okay. "We may use dentists, dental consultants, to review treatment plans, diagnostic materials, and/or prescribed treatments to determine generally accepted dental practices and to determine if treatment has a favorable prognosis."**
Q. That's fine. Thank you.
**A. You're welcome.**
Q. All right. So these processing policies are important and, in fact, necessary for Delta Dental to do its job under the contract; isn't that right?
**A. Correct.**
Q. All right. If we go to -- see if we can find it -- Bates No. 27, which is -- no. I apologize. Bates No. 28, which is electronic page No. 28 and page 19 of the benefit booklet, do you see -- what is the title in the middle of that page?
**A. So are we looking at "Exclusions"?**
Q. Yes.
**A. Okay.**
Q. Exclusions.
**A. Okay.**
Q. And what does it -- what does it say immediately under "Exclusions"?
**A. "Delta Dental does not pay benefits for."**



Q. And then it lists what I can see are 30 different exclusions going on to the next page; right?
**A. Correct.**
Q. And so No. 22, can you read that to me?
**A. Sure. "Services covered under the dental plan but exceed benefit limitations are not in accordance with processing policies in effect at the time the claim is processed."**
Q. Right. So this confirms what we were just talking about, that the processing policies are necessary for -- for Delta Dental to do its -- to do its job, to perform services under this contract; right?
**A. Correct.**
Q. And they are necessary to conform to in order for a beneficiary to be paid; isn't that right?
CHRISTOPHER RILLO: Objection. Form of the question. Sounds like necessary for the dentists to conform to.
BY O. SHANE BALLOUN:
Q. Sure. Mr. Rillo's right.
Are they necessary for the dentist to conform to in order for the benefit to be played -- paid?
**A. Yes.**
Q. Right. Okay.
So isn't it, in fact, true that Delta Dental



relies on the so-called processing policies -- whatever they are -- in order to make benefit determinations for participants and beneficiaries under the Netflix Plan?
CHRISTOPHER RILLO: Objection. Form of the question.
BY O. SHANE BALLOUN:
Q. Would you like me to reread it? Restate it?
**A. Yes.**
CANDICE SHIH: You can answer, if you can. Or if you need him to restate it, then he or the court reporter can.
**THE WITNESS: If you could restate, that would be great.**
O. SHANE BALLOUN: Madam Court Reporter, could you reread?
(Record read.)
**THE WITNESS: Yes.**
BY O. SHANE BALLOUN:
Q. And does Delta Dental also use these processing policies when a beneficiary submits a claim from a non-participating dentist?
**A. Yes.**
Q. All right. I'm going to upload another exhibit, which I'm going to call -- well, which I've marked as Exhibit No. 62.



(Deposition Exhibit 62 was marked for identification.)
O. SHANE BALLOUN: Please, everyone, let me know when you have the -- have the exhibit.
CHRISTOPHER RILLO: I don't see it.
CANDICE SHIH: Yeah. I don't see it in the chat.
O. SHANE BALLOUN: Oh, it didn't -- it's taking a while. It's 24 megabytes.
CANDICE SHIH: Okay. That will take us a while to download too.
O. SHANE BALLOUN: Yeah.
BY O. SHANE BALLOUN:
Q. Do you see it yet, Ms. Stanek-Lowe?
**A. I do.**
O. SHANE BALLOUN: Okay. Ms. Shih?
CANDICE SHIH: I do. But I want to state that any questions related to this document should be designated as -- and any answer should be designated as confidential under the protective order in this case.
O. SHANE BALLOUN: Okay.
[redacted]

Page 58

[redacted]

Page 60

[redacted]

Page 59

[redacted]

Page 61

[redacted]

[redacted]



[redacted]

Q. Okay. If a claim is denied because of the processing policies, what communication is given to a beneficiary or dentist?

**A. The Explanation of Benefits Statement would indicate in a note on the EOB why the deny -- why there was a denial of a particular claim --**

Q. And is there --

**A. -- or treatment.**



Q. Thank you.
Is there a way to appeal that denial?

**A. Yes.**

Q. Does the explanation of benefits indicate which provision of the processing policies the -- the claim was not in compliance with?

**A. Can you restate that?**

Q. Sure. If -- if there is a denial based on a failure to conform to one of Delta Dental's processing policies --

**A. Okay.**

Q. -- does the EOB issued to the dentist or the beneficiary or participant state which processing policy the claim did not conform to?

**A. I believe it does because I believe that the note refers to a specific code as to why we're denying it.**

Q. All right. You know what? Why don't we all take a break at this point, if that would be all right.

VIDEOGRAPHER: Going off record. Time now is 3:52 p.m.

(Recess.)

VIDEOGRAPHER: Back on record. Time now is 4:05 p.m.

BY O. SHANE BALLOUN:

Q. Ms. Stanek-Lowe, thanks for bearing with me this far. I want to talk a little bit more about the processing policies.
If there is a violation of the processing policies with respect to dental work that's been performed and Delta Dental, accordingly, denies a claim, we just talked about whether the code for the processing policy might be on the Explanation of Benefits. Do you remember?



**A. Yes.**

Q. And, after a bit of a break, have you determined whether you do know that for sure?

**A. No.**

Q. Okay. But, nonetheless, is there some form of reasoning given to the dentist or beneficiary -- I guess it would be the beneficiary -- on the Explanation of Benefits?

**A. Yes.**

Q. If the beneficiary receiving the EOB doesn't understand the explanation or, if there is a code there, doesn't understand the code, how would he find out about why the claim was denied?

**A. He could call our contact center.**

Q. Call Delta Dental's contact center.

**A. Correct.**

Q. And -- thank you.
And then what -- what would occur on that call?

**A. They typically -- the representative will go over the claim in more detail.**

Q. So forgive me because I know very, very little about dental claims, but if you can bear with sort of a generic hypothetical.

The -- the beneficiary calls in to the call center and says, "Hey, my claim was denied, and the reasoning is X, Y, Z. I don't understand X, Y, Z."

Then are you saying that the call center representative would walk through the claim itself and explain that X, Y, Z in further detail?

**A. What they would do is refer to the Employee Benefit Booklet as well as our system on how the benefits are programmed and based -- would provide that information back to the beneficiary in this scenario.**

Q. So, when you say "our system and how it's programmed," Delta Dental has some form of back-end or some sort of logic where these -- the meaning of these processing policies is stored?

**A. The codes are stored.**

Q. The codes --

**A. Which then the processing -- right? Process CD -- the benefit -- like, an exam code once every 12 months.**

[redacted]



[redacted]

Q. Right. Based on the -- the Employee Benefit Booklet.

**A. The Employee Benefit Booklet would be the resource that the representative would quote for the specific benefits such as, again, the exam.**

Q. And, if there was -- if the Employee Benefit Booklet was missing some information and -- because, recall, it's just a summary; right? And the --

**A. Correct.**

Q. -- beneficiary has to rely on the contract itself, not just the EBB.

What -- what would happen if there was something missing and he called the call center and there was nothing to quote from the EBB? Would then that -- would that mean then that the call center representative



would -- would explain from the processing policies?

CHRISTOPHER RILLO: Object to the form of the question.

BY O. SHANE BALLOUN:

Q. Do you understand my question, Ms. Stanek-Lowe?

**A. I don't think they get into the processing details. They're going to quote -- as I mentioned in my example, that they're going to refer to the employee handbook -- benefit booklet, and the exam shows one in a 12-month period.**

[redacted]

**Anything further, the representative would refer that member to our grievance and appeals --**

Q. I see.

**A. -- department.**

Q. They wouldn't quote the processing policy necessarily.

**A. Not to my knowledge.**

Q. Okay. Your attorney -- sorry. Not your attorney. Delta Dental's attorney wanted this section of questions in the deposition to be protected by the protective order in this case as confidential.



[redacted]

Page 70

[redacted]

Page 71

[redacted]

Q. Okay. Would Delta Dental ever deny a claim solely because it violates processing policies?
**A. So if we go back to a processing policy -- we'll keep using the same example --**
Q. That's fine. I love it.
**A. -- of the exam -- right --**
Q. Thank you.
**A. -- of the 12 months -- so we would -- again, if there was a third exam in a 12-month period, we would deny it.**
**So, yes, we would follow those policy or processing policy to either approve or deny a claim.**
Q. So I -- my guess is that the example you're using about the exam is in the Employee Benefit Booklet for Netflix. I mean, it's -- we could look, but it's --
**A. Correct.**
Q. -- pretty typical for exams to be limited to one a year; right?
**A. Correct.**

Page 72

Q. So let's think of a hypothetical policy that is not in the Employee Benefit Booklet. Let's say it just gets missed or maybe it's just not included because the document is a summary document and not every possible contingency is included; right?
**A. Correct.**
Q. Right. So not every possible contingency in the world of dental care is included but there is a policy that may -- that will guide the approval or denial of benefits. What happens in such a case? Can you walk me through that?
**A. Yeah. It would be referred to our grievance -- so, if the member called our contact center, wasn't happy with that response or didn't feel -- right -- enough response and enough explanation, they would be referred to our grievance and appeal unit.**

[redacted]

Page 73

[redacted]

Page 74

[redacted]

Page 76

[redacted]

Q. Are those changes -- with your recommendations. That's interesting.
Are those changes negotiated prior to the start of the plan year, typically?
**A. Yes.**
Q. Yes. Speaking of which, in -- in this case, do you remember what the amendments have been to the 2022 plan?
**A. No.**
Q. No. Were those negotiated prior to the start of 2022?
**A. Yes.**
Q. Yes. Okay. So those are in place already.

Page 75

[redacted]

Page 77

**A. Correct.**
Q. Okay. Thank you.
And are those in a written amendment?
**A. Yes.**
Q. Yes. How easy is it for you to access that written amendment?
**A. Easy.**
Q. Okay. And how easy is it for you to access the 2021 written amendment?
**A. Easy.**
Q. Okay. With -- when Ms. -- do you know Ms. Dana Armanino?
**A. Yes.**
Q. She testified on behalf of Netflix earlier this week. She stated that, for 2022, there were -- there was a change she could recall regarding network levels.
There appear to be three network levels that are contemplated by the Delta Dental plan; is that correct?
**A. Correct.**
Q. All right.
And I think that Net -- I hope I'm not misrepresenting, but I believe that Netflix has chosen to include the middle tier as part of its plan benefits. Does that sound familiar?
**A. It was already included.**

Q. Okay.
**A. So it was PPO Premier and non-contracted dentists.**
Q. Okay.
**A. And then there was a consolidation between our PPO and Premier -- or what -- what they wanted. We didn't. We consolidated how we're processing claims for the PPO and Premier.**
Q. I see.
What does it mean for you to consolidate how the claims are processed?
**A. Basically there are contracted fees with our PPO dentists. There are contracted fees with our Premier dentists. And so, when we consolidate, that means that we will pay claims at a certain level -- all claims at a certain level.**
Q. All claims at a certain level.
**A. Uh-huh. Except for out of network.**
Q. Expect for out of network. So --
**A. We're talking about our contracted fees.**
Q. The contracted fees with network providers.
**A. Correct.**
Q. Back for a moment to the -- well, no. So that change -- actually, now that I'm thinking about it, that change has already been implemented for the 2022 year;



right?
**A. Correct.**
Q. Okay. And there's a written amendment that exists somewhere, and you have access to it easily.
**A. Correct.**
Q. But that chain is not yet -- change is not yet reflected or represented in an Employee Benefit Booklet; right?
**A. I don't know.**
Q. You don't know.
**A. And why I say that is because not ever -- not every single change that's in an amendment actually gets into an Employee Benefit Booklet. Like a -- like a contracted fee --**
Q. Uh-huh.
**A. -- is in an amendment. That's never disclosed in an Employee Benefit Booklet.**
Q. Sure. So back to the out of network versus in network and back to the dentist handbook.
Do the --
**A. Uh-huh.**
Q. -- in-network dentists have copies of the dentist handbook?
**A. Yes.**
Q. Are they subject to a confidentiality agreement



with Delta Dental about the dentist handbook?
**A. Yes.**
Q. What about non-network dentists? Are they given a copy of the dentist handbook?
**A. I don't know.**
Q. Don't know. Okay.
All right. Well, I think that I'm finished. And I would invite Delta Dental's counsel to redirect or Mr. Rillo to ask questions.
Thank you for your time.
**THE WITNESS: You're welcome.**
CANDICE SHIH: Yeah. I don't -- sorry, Chris. I was just going to say I -- I don't have any questions, and you're welcome to go ahead.
CHRISTOPHER RILLO: Well, thank you, Candice. I was going to ask whether you wanted to ask questions.

E X A M I N A T I O N

BY CHRISTOPHER RILLO:
Q. Ms. Stanek-Lowe, I know it's been a long day, and I just have a few questions to make this -- to make this a little bit more clear, I hope.
First question is I'd like to turn to Exhibit 61, which is the Delta Administrative Services Contract. Could you look at that with me, please?
**A. Yes.**



Q. I want you to scroll through the first seven pages.
Would you agree with me, looking at the first seven pages, that there's nothing in these pages that provides any benefits to Netflix participants in the Delta Dental plan?
**A. Correct.**
Q. Okay. And then let's look at Exhibit -- I guess it's B to the agreement. And Exhibit B to the agreement is simply attaching the Employee Benefit Booklet.
Is this the same Employee Benefit Booklet, to your knowledge, that's distributed to Netflix participants in the Delta Dental plan?
**A. Yes.**
Q. So -- and it describes the benefits; right?
**A. Correct.**
Q. So, if a participant was to ask for the Administrative Services Contract, all the information on benefits that he or she would get is what's already contained in the -- in the benefit booklet; right?
**A. Correct. And that's also attached to the administrative agreement as an attachment.**
Q. Now, we -- we spent a lot of time in this deposition asking about processing policies, and this is a simple question:

Processing policies are used with respect to claims; right?
**A. Correct.**
[redacted]
**A. Yes.**
Q. I apologize. But, Ms. Stanek-Lowe, I missed the introduction. Are you an attorney by chance?
**A. No.**
Q. Thank god. Okay. All right. Let me just ask another couple of questions.
There's a reference in the booklet that benefits are, to some extent, dependent on the contract. We can go look at it, again, if you wish, but let's look at Exhibit 45.
**A. Okay.**
Q. I think page 377, Ms. Stanek-Lowe, the



italicized language in the -- under "Notice."
**A. "This booklet is a summary of your group dental ben -- dental plan and must be in effect at the time covered dental services are provided. This information is not a guarantee of covered benefit, services, or payments."**
Q. In fact, what -- what's true is that, if Netflix doesn't perform on its obligations to the Administrative Services Contract such as paying for -- paying Delta Dental for its participants, there's no coverage; right?
**A. Correct.**
Q. Okay. Those are all the questions I have.
VIDEOGRAPHER: Counsel?
O. SHANE BALLOUN: Ms. Stanek-Lowe, thank you for your time. I really appreciate it.
**THE WITNESS: You're welcome.**
VIDEOGRAPHER: Very well. This will conclude the 30(b)(6) video deposition of Delta Dental of California by and through Sharen Stanek-Lowe.
Time now is 4:32 p.m. Going off record.
(Signature reserved.)
(Deposition concluded at 4:32 p.m.)



A F F I D A V I T

I, SHAREN STANEK-LOWE, hereby declare under penalty of perjury that I have read the foregoing deposition and that the testimony contained herein is a true and correct transcript of my testimony, noting the corrections attached.

______________________________

SHAREN STANEK-LOWE

Date: ______________________________



C E R T I F I C A T E

STATE OF WASHINGTON )
) ss.
COUNTY OF PIERCE )

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010, authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify: That the foregoing deposition of the witness named herein was taken stenographically before me and reduced to a typed format under my direction;

That, according to CR 30(e), the witness was given the opportunity to examine, read, and sign the deposition after same was transcribed, unless indicated in the record that the review was waived;

That I am not a relative or employee of any attorney or counsel or participant and that I am not financially or otherwise interested in the action or the outcome herein;

That the witness coming before me was duly sworn or did affirm to tell the truth;

That the deposition as transcribed is a full, true and correct transcript of the testimony, including questions and answers and all objections, motions, and examinations, and said transcript was prepared pursuant to the Washington Administrative Code 308-14-135 preparation guidelines;

That as a matter of firm policy, the stenographic notes of this transcript will be destroyed three years from the date appearing on this transcript, unless notice is received otherwise from any party or counsel on or before said date.

Jamie Booker, RPR, CCR
State of Washington CCR #3281
My CCR certification expires on 10/20/2022

To: CANDICE P. SHIH
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
CShih@hansonbridgett.com

Case Name: Zavislak v. Netflix
Deposition of: Sharen Stanek-Lowe
Date Taken: 2/25/2022
Cause No.: 5:21-CV-01811-EJD
Court Reporter: Jamie Booker, RPR, CCR

This letter is to advise you of the following:

_____ Signature was reserved. The affidavit and correction sheet are being forwarded to you in electronic form. Please have the deponent review the transcript, note any corrections on the correction sheet, and return the signed affidavit and correction sheet to us within 30 days of this notice. According to Court Rule 30(e), the deposition affidavit should be signed within thirty (30) days or signature is considered waived.

_____ Signature was reserved. The transcript is ready for review and signature. Your office did not order a copy of the deposition transcript. Please contact our office to make an appointment for review. Signature must be completed within 30 days of this notice.

(Sent without signature to avoid delay)

___________________________________
Jamie Booker, RPR, CCR



C O R R E C T I O N S H E E T

PLEASE NOTE ALL CHANGES OR CORRECTIONS ON THIS SHEET BY PAGE AND LINE NUMBER AND THE REASON THEREFOR.

| PAGE | LINE | CORRECTION AND REASON |
|---|---|---|
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |
| ____ | ____ | ________________________________________ |